IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ELECTION SYSTEMS & SOFTWARE, LLC,<br><br>    Plaintiff,<br><br>vs.<br><br>RBM CONSULTING, LLC, and GERALD G. HAYEK,<br><br>    Defendants. | 8:11CV438<br><br><br><br>MEMORANDUM AND ORDER |

  This matter is before the Court on the motion to dismiss (filing 18) filed by defendants Gerald G. Hayek (Hayek) and RBM Consulting, LLC (RBM). Plaintiff Election Systems & Software, LLC (ES&S), sets forth five causes of action in its complaint (filing 1). Defendants assert that the first, second, and fifth causes fail to state claims upon which relief can be granted, so they should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). The Court has considered the parties' briefs (filings 19, 20, and 21). For the reasons discussed below, the Court finds that defendants' motion should be denied as to the first and fifth claims, and granted in part as to the second claim. However, ES&S will be given leave to amend its complaint.

  I.  BACKGROUND

  The following facts are drawn from ES&S' complaint (filing 1) and are accepted as true for purposes of defendants' motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). ES&S manufactures and sells voting machines and the software to run the machines. Filing 1, at ¶ 1. RBM is also in the elections business. Filing 1, at ¶ 2. Hayek used to be employed by ES&S, and now works for RBM. Filing 1, at ¶ 3.

  ES&S developed and owns Unity Election Management System Software ("Unity Software"). Filing 1, at ¶ 6. Unity Software helps state and local governments manage elections. Filing 1, at ¶ 6. The software allows governments to create databases of election information, format ballots, program election equipment, and collect and report voting results. Filing 1, at ¶ 6. ES&S possesses trademark registrations for "Unity" and "UNITY ELECTION SYSTEM AND DESIGN." Filing 1, at ¶ 7–8. The software is also

subject to a copyright owned by ES&S. Filing 1, at ¶¶ 8, 20. ES&S licenses the software to customers for a fee. Filing 1, at ¶ 7.

ES&S also manufactures and sells the Model 650 Central Ballot Counter ("Model 650"), which is a "high-speed central paper ballot counter and vote tabulator." Filing 1, at ¶ 9. The counting and tabulation processes of the Model 650 are controlled by Unity Software and ES&S' firmware.[1] Filing 1, at ¶ 10. The Model 650 cannot be operated without Unity Software. Filing 1, at ¶ 10.

On or about January 15, 1998, Hayek entered into a Nondisclosure Agreement with ES&S. Filing 1, at ¶ 11.[2] In exchange for his employment with ES&S, Hayek agreed to the following:

> I agree that I will not at any time, either during or after my employment with ES&S until the Confidential Information becomes publicly known, in any way disclose to anyone or use for any purpose any Confidential Information of ES&S, except as specifically required in the proper performance of the duties of [my] employment with ES&S or as expressly authorized by ES&S.
> . . . .
> Upon termination of my employment with ES&S for any reason, I agree to immediately return all Confidential Information, including any and all copies thereof, to ES&S.

Filing 1, at ¶¶ 12–13.

As an employee of ES&S, Hayek had access to the company's Confidential Information. Filing 1, at ¶¶ 25, 32. The Nondisclosure Agreement defines "Confidential Information" as information about products, customers and prospective customers, software, trade secrets, and "know-how regarding the business of ES&S and its products and services." Filing 1, at ¶ 12. "Software" includes, (but is not limited to) "source and object form, screen displays and formats, program structure, sequence and organization, and audio-visual elements of such software, listings thereof and documentation related thereto." Filing 1, at ¶ 12. Hayek also agreed not to copy or otherwise

---

[1] Firmware is "permanent software programmed into a [device's] read-only memory." *The New Oxford American Dictionary* (Oxford University Press 2005).

[2] ES&S states that the Nondisclosure Agreement is attached to its complaint, but it is not to be found on the complaint as filed. *See* filing 1.

- 2 -

reproduce any records or materials belonging to ES&S, except as authorized by ES&S. Filing 1, at ¶ 13.

Unity Software is Confidential Information protected by the Nondisclosure Agreement. Filing 1, at ¶ 14. Neither Hayek or RBM have entered into a license agreement with ES&S for the software, nor have they paid the required licensing fee. Filing 1, at ¶ 21. Defendants do not have permission to use or possess the software. Filing 1, at ¶¶ 15, 26, 28.

Around September 2011, ES&S learned that Hayek and RBM solicited business from one of ES&S' customers in Pennsylvania, in part by using copies of the Unity Software. Filing 1, at ¶¶ 16–17. ES&S alleges that Hayek violated the Nondisclosure Agreement by copying and removing Confidential Information and disclosing it to RBM. Filing 1, at ¶¶ 26, 27, 32, 36. ES&S further claims that both Hayek and RBM have disclosed, copied, and used ES&S' Confidential Information, including Unity Software. Filing 1, at ¶¶ 27, 28, 32. Specifically, ES&S alleges that defendants performed an election recount for a county primary race in Pennsylvania that was held on May 17, 2011. Filing 1, at ¶ 18. RBM and Hayek used a Model 650 to perform this recount. Filing 1, at ¶ 18. This could not have been accomplished without using the Unity Software. Filing 1, at ¶ 18.

ES&S claims that defendants' conduct caused a likelihood of confusion as to the source, sponsorship, approval, or certification of the goods or services sold by RBM and Hayek. Filing 1, at ¶ 41. Defendants' use of the Model 650 and Unity Software might lead consumers to believe that RBM or Hayek have been certified, sponsored, or approved by ES&S, or that defendants are somehow affiliated with ES&S. Filing 1, at ¶ 42.

ES&S brings several claims against both defendants: copyright infringement, pursuant to 17 U.S.C. § 501 *et seq*. (Claim I); misappropriation of trade secrets, in violation of the common law and the Nebraska Trade Secrets Act, Neb. Rev. Stat. §§ 87-502 *et seq*. (Claim II); conversion (Claim III); and for violations of the Nebraska and Pennsylvania consumer protection laws. Filing 1, at ¶¶ 19–43. ES&S also brings a claim solely against Hayek for breach of contract (Claim IV). Filing 1, at ¶¶ 34–38.

## II. STANDARD OF REVIEW

**Rule 12(b)(6)**

A complaint must set forth a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). The plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Hamilton v. Palm*, 621 F.3d 816, 817 (8th Cir. 2010). The complaint need not

contain detailed factual allegations, but must provide more than a formulaic recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 555.

The Court must assume the truth of the plaintiff's factual allegations, and a well-pleaded complaint may proceed, even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely. *Id.* at 555–57. But to survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In contrast to factual allegations, courts are not required to accept as true a plaintiff's legal conclusions. *Brown v. Medtronic, Inc.*, 628 F.3d 451, 459 (8th Cir. 2010).

Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the court to draw on its judicial experience and common sense. *Iqbal*, 556 U.S. at 679.

### III.  ANALYSIS
**A.  Claim I – Copyright Infringement**

ES&S alleges that it owns a valid copyright in Unity Software, which RBM and Hayek willfully infringed upon in violation of 17 U.S.C. § 501 *et seq*. Filing 1, at ¶¶ 19–23. Specifically, defendants copied the software and used it to perform an election recount for one of ES&S' customers in Pennsylvania. Filing 1, at ¶¶ 16–18.

The Copyright Act grants copyright owners the exclusive right to reproduce copyrighted works and to distribute copies of works to the public by sale, other transfer of ownership, or by rental, lease, or lending. 17 U.S.C. § 106(1), (3). A claim of copyright infringement has two elements: (1) the plaintiff owned a valid copyright in the work at issue; and (2) the defendants copied the work's original elements. *Rottlund Co. v. Pinnacle Corp.*, 452 F.3d 726, 731 (8th Cir. 2006). Defendants do not dispute that ES&S owned a valid copyright in Unity Software. Filing 21, at 2 n.1.

Instead, Hayek and RBM seize upon a technicality in ES&S' complaint and argue that ES&S has failed to adequately plead that defendants copied Unity Software. ES&S did, in fact, allege that defendants copied Unity Software. *See* Filing 1, at ¶¶ 32–33. But these allegations are found in ES&S' third claim for relief, which comes after the copyright claim. The copyright claim does not expressly incorporate these allegations. *See* Filing 1, at ¶¶ 19–23. The first claim only alleges that defendants have not entered into a license agreement with ES&S, nor paid the requisite licensing fee, and are therefore infringing upon ES&S' copyright. Filing 1, at ¶¶ 19–23.

Defendants cite *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 447 (1984), for the general proposition that even an

unauthorized use of a copyrighted work does not necessarily infringe upon the copyright. Rather, the use must conflict with one of the exclusive rights specifically conferred by the copyright statute, such as the right to reproduce copies of the work. *Id.* RBM and Hayek argue that without an allegation of copying, or violation of another right granted by the Copyright Act, ES&S' claim must fail.

The Court need not dwell long on this argument. The purpose of notice pleading under Rule 8 is to give the opposing party fair notice of what the claim is and the grounds upon which it rests. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009); *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1215 (West 2012). ES&S has pled that defendants copied Unity Software. Filing 1, at ¶¶ 32–33. ES&S' complaint is not long or complicated. The allegations of copying appeared merely two pages after the copyright claim. Defendants have received adequate notice of the claims against them. To find otherwise would elevate form over substance. Defendants' motion to dismiss is denied as to ES&S' claim for copyright infringement.

## B.    Claim II – Misappropriation of Trade Secrets

In its second claim, ES&S alleges that Hayek misappropriated ES&S' trade secrets, including Unity Software, by using the software and other "Confidential Information" to perform a recount for one of ES&S' customers, and by disclosing these secrets to RBM. Filing 1, at ¶¶ 11–15, 24–27. ES&S claims that RBM misappropriated ES&S' trade secrets by obtaining the software from Hayek and then using it to perform a recount. Filing 1, at ¶¶ 16–18, 27. ES&S asserts claims under the common law and the Nebraska Trade Secrets Act (NTSA), Neb. Rev. Stat. §§87-501 *et seq.*[3]

The NTSA protects against the misappropriation of trade secrets, § 87-502, and provides for injunctive relief, § 87-503, as well as damages under certain circumstances, § 87-504. The NTSA defines "trade secret" as:

> information, including, but not limited to, a drawing, formula, pattern, compilation, *program*, device, method, technique, code, or process that:
>
> (a)    Derives independent economic value, actual or potential, from not being known to, and not being ascertainable by

---

[3] The parties' briefs only discuss ES&S' claim under the NTSA; neither side has addressed the common law claim. This Memorandum and Order has no effect on that claim.

>> *proper means* by, other persons who obtain economic value from its disclosure or use; and
>
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Neb. Rev. Stat. § 87-502(4) (emphasis supplied).[4]

Defendants argue that Unity Software was not a "trade secret" within the meaning of the NTSA, because it was "published and publicly distributed by [ES&S] to third parties" which placed it "in the public domain, where it is susceptible to inspection, duplication[,] and reverse engineering." Filing 19, at 5. Although ES&S' complaint refers vaguely to other trade secrets that Hayek disclosed to RBM, the only secret actually alleged is the software. Therefore, if ES&S second claim is to survive, the information underlying Unity Software must constitute a trade secret.

The subject matter of a trade secret must be *secret*, something known to only a few and not susceptible of general knowledge. *Richdale Development Co. v. McNeil Co., Inc.*, 508 N.W.2d 853, 859 (Neb. 1993). But not all disclosures will destroy secrecy. *Nova Chemicals, Inc. v. Sekisui Plastics Co., Ltd.*, 579 F.3d 319, 327 (3d Cir. 2009). Holders of trade secrets may sell the information under a license, without compromising its secrecy, so long as the licensee is legally obligated to protect the secret. *Id.* at 327–28. But if the license does not require the licensee to maintain secrecy, the information may lose its status as a trade secret. *Id.* at 328; *see also Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984).

ES&S has alleged only that it distributed Unity Software via licenses; it has not alleged what those licenses allowed or prohibited. *See* Filing 1, at ¶ 8. ES&S has not disclosed what steps were taken to prevent licensees from copying, modifying, or reverse-engineering the underlying code. It is not clear whether licensees had access to the software's source code.[5] ES&S has failed to allege facts from which the Court can plausibly infer the Unity Software

---

[4] "*Improper* means" and "misappropriation" are defined in § 87-501(1) and (2), respectively. Neither of these elements are presently at issue.

[5] "When programmers write code, they write in 'source code,' which is written in a programming language that humans can understand." *Asset Marketing Systems, Inc. v. Gagnon*, 542 F.3d 748, 755 n.5 (9th Cir. 2008) (citations omitted). Source code is then compiled into "object code," that actually directs a computer's operation. *Id.*; *Quantlab Technologies Ltd. (BVI) v. Godlevsky*, 719 F. Supp. 2d 766, 773 n.2 (S.D. Tex. 2010). "Generally, when software is distributed, only the compiled object code is distributed and the programmer retains the source code." *Gagnon*, 542 F.3d at 755 n.5.

(1) was not ascertainable by "proper means"; and (2) was subject to reasonable efforts to maintain its secrecy. Neb. Rev. Stat. § 87-502(4).

ES&S has alleged that Hayek signed a Nondisclosure Agreement, and that copying or using the Unity Software or other "Confidential Information" would violate that agreement. Filing 1, at ¶¶ 11–15. That does show that some efforts were made to maintain the software's secrecy. But such efforts would be in vain if the software licenses allowed users to make and distribute copies of the software or its underlying code and secret elements. Although defendants did not have a license, if other licensees were able to distribute the software's underlying code (or other secret aspects), then the software may have lost its status as a trade secret. The factual allegations in ES&S' complaint do not reveal whether Unity Software was a trade secret. Accordingly, the Court will grant RBM and Hayek's motion to dismiss ES&S' second claim for relief under the NTSA. ES&S' claim under the common law is unaffected, as neither party has addressed whether it differs in any way from the NTSA claim.

This case is still in its early stages, so the Court will grant ES&S leave to amend its complaint. To properly plead a claim under the NTSA, ES&S must allege facts sufficient to show that Unity Software (and any other trade secrets) were not ascertainable by proper means and were subject to reasonable efforts to maintain secrecy.

Defendants also argue that ES&S' claim under the NTSA is expressly preempted by the Copyright Act. The Court will address this argument now, because it would be futile to allow ES&S to amend its complaint if it would simply be preempted. Defendants' preemption argument is without merit: a cause of action under the NTSA requires proof of additional elements beyond those in a claim for copyright infringement. *Nat'l Car Rental System, Inc. v. Computer Assocs. Int'l., Inc.*, 991 F.2d 426, 431 (8th Cir. 1993). Therefore, ES&S' claim under the NTSA is not preempted.

The Copyright Act provides the exclusive source of protection for all legal and equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by § 106 of the Act. 17 U.S.C. § 301(a); *Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005). State laws based on rights exclusively protected by the Copyright Act are preempted. *Davidson*, 422 F.3d at 638. A state cause of action is expressly preempted if: (1) the work at issue is within the subject matter of copyright as defined in §§ 102 and 103 of the Copyright Act, and (2) the state-law-created right is equivalent to any of the exclusive rights within the general scope of copyright as specified in § 106. *Id.*

Only the second element is at issue here; all parties agree Unity Software is subject to a valid copyright. A right created under state law is

- 7 -

equivalent to those protected by the Copyright Act when it is "'infringed by the mere act of reproduction, performance, distribution or display.'" *Nat'l Car Rental System*, 991 F.2d at 431 (quoting 1 Melville B. Nimmer and David Nimmer, *Nimmer on Copyright* §1.01[B] at 1–13 (1991)).

However, a state cause of action is not preempted if it passes the "extra element" test. *Barclays Capital Inc. v. Theflyonthewall.com, Inc.*, 650 F.3d 876, 893 (2d Cir. 2011). If the claim requires proof of an element "'instead of or in addition to the acts of reproduction, performance, distribution or display,'" it will not be preempted. *Nat'l Car Rental System*, 991 F.2d at 431 (quoting Nimmer, *supra*, § 1.01[B] at 1-14-15)).

ES&S' claim under the NTSA passes the extra element test. To state a claim for misappropriation of a trade secret, the claimant must allege elements outside the scope of copyright protection: a relationship of secrecy and an actual trade secret. *Richdale Development Co.*, 508 N.W.2d at 859. Therefore, if ES&S amends its complaint to assert a new claim under the NTSA (and assuming ES&S' theory of liability still implicates "extra elements"), such claim will not be preempted.

As it stands, ES&S' claim for relief under the NTSA does not contain sufficient factual content to state a plausible claim for relief. The Court will grant defendants' motion to dismiss, with leave for ES&S to amend. ES&S' common law claim remains unaffected.

### C. Claim V - Deceptive Trade Practices in Violation of Nebraska and Pennsylvania Law

In its final claim, ES&S alleges violations of the Nebraska Uniform Deceptive Trade Practices Act, ("Nebraska DTPA") Neb. Rev. Stat. §§ 87-301 *et. seq.*, and the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania UTPCPL"), P.S. §§201-1 *et seq*. The Nebraska DTPA and Pennsylvania UTPCPL both prohibit "deceptive trade practices" which include conduct:

> (ii) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;
> (iii) Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another;
> . . . .
> (v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a

> sponsorship, approval, status, affiliation or connection that he does not have.

73 P.S. § 201-2(4)(ii), (iii), (v); *see also* Neb. Rev. Stat. § 87-302(a)(2), (3), (5) (using essentially the same language).

ES&S claims that by using Unity Software to perform a recount for ES&S' customer, defendants caused a likelihood of confusion as to the source, sponsorship, approval, or certification of the goods or services sold by RBM and Hayek. Filing 1, at ¶¶ 17–18, 41. ES&S alleges that defendants' conduct might lead consumers to believe that RBM or Hayek have been certified, sponsored, or approved by ES&S, or are somehow affiliated with ES&S. Filing 1, at ¶ 42.

RBM and Hayek argue that ES&S has failed to allege sufficient facts in support of these allegations. Defendants assert that merely using the software without authorization on one or more occasions is not sufficient to cause a likelihood of confusion. RBM and Hayek also point out that ES&S has not alleged that either defendant "expressly misrepresented or implied any affiliation with [ES&S] or its products." Filing 19, at 8.

These arguments are without merit. ES&S has alleged facts which, when accepted as true, state a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 678. Defendants did not use Unity Software to perform a recount for just anybody—they used it to provide services to one of ES&S' customers. It is reasonable to infer that the customer, seeing RBM and Hayek use the same equipment and software as ES&S, might believe some relationship existed between ES&S and defendants. These facts suffice to state a claim that is plausible on its face.

Defendants next argue that this claim is preempted by the Copyright Act. The Court finds otherwise. To allege a violation of both Nebraska and Pennsylvania law, ES&S must show a likelihood of consumer confusion, or that certain misrepresentations were made concerning defendants or their goods or services. *See*, 73 P.S. § 201-2(4)(ii), (iii), (v); Neb. Rev. Stat. § 87-302(a)(2), (3), (5); *cf. Richdale Development Co.*, 508 N.W.2d at 860. ES&S' fifth claim passes the "extra elements" test and is not preempted. As to ES&S' fifth claim, both of defendants' arguments are without merit, and their motion to dismiss is denied.

## IV. CONCLUSION

ES&S has properly pled claims for relief under the Copyright Act (Claim I) and Nebraska and Pennsylvania consumer protection laws (Claim V). RBM and Hayek's motion to dismiss is denied as to these claims. However, ES&S has failed to adequately plead a violation of the Nebraska

Trade Secrets Act (Claim II). The Court will dismiss ES&S' claim for relief under the Nebraska Trade Secrets Act, but will grant ES&S leave to amend its complaint. ES&S' claim for trade secret misappropriation under the common law, however, is not affected by this Memorandum and Order.

Accordingly,

    IT IS ORDERED:

1. RBM and Hayek's motion to dismiss (filing 18) is granted in part and denied in part:

    a. ES&S' claim under the Nebraska Trade Secrets Act fails to state a claim upon which relief can be granted, and is dismissed;

    b. RBM and Hayek's motion to dismiss is otherwise denied; and

2. ES&S is granted leave to file an amended complaint.

Dated this 25th day of May, 2012.

                              BY THE COURT:

                              *John M. Gerrard* (signature)
                              John M. Gerrard
                              United States District Judge