IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ELECTION SYSTEMS & SOFTWARE, LLC, | Case No. 8:11-cv-00438 |
| Plaintiff, | |
| vs. | |
| RBM CONSULTING, LLC, and GERALD G. HAYEK, | |
| Defendants. | |

| | |
|---|---|
| RBM CONSULTING, LLC, | |
| Counterclaim Plaintiff, | |
| vs. | |
| ELECTION SYSTEMS & SOFTWARE, LLC, | |
| Counterclaim Defendant. | |

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Prepared and Submitted By:

Michael S. Degan, NE #20372
HUSCH BLACKWELL LLP
13330 California St., Suite 200
Omaha, NE  68154

ATTORNEYS FOR DEFENDANTS

OMA-372893-1

## <u>INTRODUCTION</u>

Plaintiff initiated this suit in December, 2011, alleging that Defendants copied and used unauthorized copies of its Unity Software and other unspecified confidential information. Specifically, Plaintiff alleged that Defendants used an unlawful copy of Unity Software to solicit and conduct a recount election in Centre County, Pennsylvania on June 1, 2011.  The sole basis for the claims alleged by Plaintiff was a newspaper article reporting the June 1, 2011 Centre County recount, and accompanying photograph of Defendant Hayek.  Plaintiff erroneously speculated from the newspaper article that Defendants used pirated Unity Software in order to conduct the recount, a position Defendants have steadfastly denied from the beginning. Defendants' position was later confirmed by the deposition testimony of Centre County election officials, who testified that the Centre County recount election was conducted by Centre County election officials using Centre County's own licensed copy of Unity Software.

After nearly three years of litigation, discovery has closed on issues relating to the Amended Complaint.  Despite substantial discovery, Plaintiff has failed to identify or disclose any evidence substantiating the material allegations of the Amended Complaint.  Plaintiff still relies upon the innocuous newspaper article reporting on the Centre County recount, despite having been thoroughly debunked by Centre County election officials.  Accordingly, for each the reasons cited herein, Defendants are entitled to summary judgment as a matter of law with respect to each of the claims asserted in the Amended Complaint.

## BACKGROUND

Plaintiff Election Systems & Software ("ES&S") is the largest provider of voting equipment and related software in the United States.[1]   ES&S manufactures and sells voting equipment, include ballot scanners and direct input devices ("Voting Machines") and related software to state and local governments.   ES&S also separately offers maintenance and support services to customers who purchase ES&S Voting Machines.   Such service and maintenance agreements typically provide for maintenance and support for Voting Machines, such as routine maintenance, repair and replacement parts.   ES&S also offers consulting services to assist state and local governments to plan and conduct elections.

Defendant RBM Consulting ("RBM") is an independent service contractor that provides maintenance and election support to state and local governments.   Unlike ES&S, RBM does not manufacture voting machines.   Rather, RBM provides service to customers who use various makes and models of voting machines, including voting machines manufactured by ES&S, akin to an auto mechanic who services all makes and models.   Because ES&S dominates the market for voting machines, many of RBM's customers use ES&S Voting Machines.   In states and counties that utilize ES&S Voting Machines, RBM and ES&S directly compete for maintenance and election support services contracts.[2]

## ALLEGATIONS OF THE AMENDED COMPLAINT

Plaintiff commenced this action in December 2011.   [Doc. # 1].   The Amended Complaint asserts five enumerated claims against the Defendants: (i) copyright infringement; (ii)

---

[1] *United States v. Election Systems & Software*, Case No. 1:10-cv-00380 (D.D.C. 2010).  In the Competitive Impact Statement filed in the before referenced action, the United States Department of Justice determined that "Election Systems and Software, Inc. is the largest provider of voting equipment in the United States."

[2] A similar secondary service market, as well as antitrust issues raised by conduct similar to that alleged in Defendants' Counterclaim, was described and addressed by the United States Supreme Court in *Eastman Kodak Company v. Image Technical Services, Inc.*, 504 U.S. 451 (1992).

violation of the Nebraska Trade Secrets Act; (iii) common law conversion; (iv) breach of contract against Defendant Hayek; and (v) violation of state deceptive and unfair trade practice statutes.  [Doc. # 24].  The material allegations of the Amended Complaint [Doc. #24] are as follows:

1.     Plaintiff alleges that it developed and owns Unity Election Management System Software ("Unity Software").  [Doc.#24, ¶ 6].

2.     Plaintiff claims Unity Software is a trade secret and subject of a valid copyright. [Doc. #24, ¶¶ 7 & 9].

3.     Plaintiff claims that Unity Software is "Confidential Information" as defined by the Nondisclosure Agreement executed by Defendant Hayek while employed by ES&S.  [Doc. #24, ¶ 17].

4.     Plaintiff claims "upon information and belief" that Defendants have "unlawfully copied and used ES&S' Unity Software."  [Doc.#24, ¶¶ 19, 39].

5.     Plaintiff claims "upon information and belief" that Defendants "reproduced written, magnetic media, or other documents, records or materials belonging to ES&S containing or constituting ES&S Confidential Information and trade secrets."  [Doc.#24, ¶¶ 19, 39].

6.     Plaintiff claims that ES&S "has received information that Hayek and RBM are in possession of and are using ES&S' proprietary Unity Software in their business activities." [Doc.#24, ¶ 20].

7.     Plaintiff claims that "Hayek and RBM solicited services from one of ES&S' customers in Pennsylvania, in part by using copies of ES&S' proprietary Unity Software."  [Doc. #24, ¶ 21].

8.      Plaintiff alleges that in 2011, Defendants performed an election recount for Centre County, Pennsylvania, and that Defendants "had no legal right to use the Unity Software" in connection with said recount.  [Doc. #24, ¶ 22].

9.      Plaintiff alleges that Defendants used a M650 voting machine to perform the Centre County recount, "a task which could not be performed without their unauthorized use of the Unity Software." [Doc. #24, ¶ 23].

10.      Plaintiff alleges that Defendants do not have permission to "use or possess the Unity Software." [Doc. #24, ¶¶ 18].

11.      Plaintiff alleges that Defendant Hayek was provided access to "trade secrets" while employed at ES&S.  [Doc. #24, ¶ 32].

12.      Plaintiff alleges that pursuant to the terms of the Nondisclosure Agreement that Defendant Hayek executed while employed at ES&S, Defendant Hayek "has a duty to maintain the secrecy of ES&S trade secrets and not to use ES&S trade secrets." [Doc. #24, ¶ 32].

13.      Plaintiff alleges that since leaving ES&S, Defendant Hayek has "disclosed and/or used ES&S trade secrets without the express or implied consent of ES&S." [Doc. #24, ¶¶ 33 & 43].

14.      Plaintiff alleges that Defendant Hayek disclosed "trade secrets" belonging to ES&S to Defendant RBM.  [Doc. #24, ¶ 34].

15.      Plaintiff alleges that Defendant RBM "disclosed and/or used ES&S trade secrets without the express or implied consent of ES&S." [Doc. #24, ¶ 35].

16.      Plaintiff alleges that Defendant Hayek breached his Nondisclosure Agreement by "disclosing ES&S' Confidential Information and by copying and removing ES&S' Confidential Information and property." [Doc. #24, ¶ 42].

17.     Plaintiff alleges that Defendants have engaged in conduct likely to cause confusion or a misunderstanding as to the source, sponsorship, approval or certification of their goods or services supplied by RBM.  [Doc. #24, ¶¶ 48-49].

## DISCOVERY

### A.      *Discovery Disputes*

Plaintiff's Initial Disclosures failed to substantiate the allegations of the Amended Complaint. [Stmt. Mat. Fact ¶ 17].  Defendants thereafter served discovery requests, including contention interrogatories, seeking identification and disclosure of all facts, witnesses and documents supporting each of the material allegations of the Amended Complaint in February 2013. [Doc. #53-1; 53-2; 53-3].  Plaintiff objected to every interrogatory and each request for production and did not answer a single discovery request.  [Doc. #53-1; 53-4; 53-5].  Defendants filed a Motion to Compel on May 3, 2013. [Doc. #51].  The Court overruled each of the objections asserted by Plaintiff to the interrogatories, and granted most of the relief sought by Defendants' Motion to Compel. [Doc. #62].  With respect to Defendants' contention interrogatories, the Court noted that Defendants requested and were entitled to basic factual information regarding Plaintiff's claims.  [Doc. #62, at 12].  Accordingly, the Court specifically ordered Plaintiff to produce the information, or state that Plaintiff does not have any information to disclose.  *Id.*  Nevertheless, despite having been ordered to supplement its discovery responses and answer the contention interrogatories, Plaintiff failed to do so prior to close of discovery.  Written discovery on issues relating to the Amended Complaint closed on July 18, 2014.   [Doc. #63].

After Plaintiff failed to produce its supplemental disclosures despite repeated requests, Defendants moved for sanctions on August 11, 2014, for Plaintiff's failure to comply with the

Court's order.   [Doc. #68].   Defendants' Motion for Sanctions remains pending.   Among the relief sought by Defendants pursuant to its Motion for Sanctions is an order striking Plaintiff's claims or granting judgment in favor of Defendants, or alternatively, and barring Plaintiff from introducing any information that Plaintiff failed to timely disclose in discovery, either at trial or in opposition to summary judgment.  *Id.*

On September 22, 2014, more than a month after Defendants moved for sanctions, Plaintiff finally served supplemental discovery responses pursuant to the Court's discovery order, including answers to Defendants' contention interrogatories.  [Doc. # 81; Index, Ex. 9 & 10].   Defendants contend that Plaintiff's responses are untimely and subject to Defendants' pending Motion for Sanctions.  [Doc. #68].   Moreover, Plaintiff's belated responses confirm what Defendants have long known: the allegations asserted by Plaintiff in this lawsuit are completely unfounded.

**B.      *Discovery Concluded***

During the course of discovery, Plaintiff served Initial Disclosures, wherein Plaintiff identified and later produced a copy of a newspaper story posted June 2, 2011, on www.centredaily.com, a website maintained by the Centre Daily Times newspaper.  [Stmt. Mat. Fact ¶ 17; Index, Ex. 12].   The news article reported the recount election conducted on June 1, 2011 in Centre County, Pennsylvania.  The article described Jerry Hayek of RBM feeding ballots into a ballot reader, and included a photograph of Mr. Hayek. The article made no mention of Unity Software. *Id.* Plaintiff also produced a copy of the Nondisclosure Agreement Hayek signed during his employment with ES&S that was attached to the Amended Complaint.  *Id.*

In Plaintiff's Initial Disclosures, Plaintiff identified only two persons having discoverable information supporting Plaintiff's claims who were not affiliated with ES&S or RBM, Joyce

McKinley and Jodi Neidig.  Ms. McKinley and Ms. Neidig are election officials employed by Centre County, Pennsylvania.  [Index, Ex. 8].  However, when deposed in this case on February 4, 2014, neither witness supported any of Plaintiff's allegations.  In fact, both directly contradicted the allegations in the Amended Complaint that RBM furnished and used a pirated copy of Unity to conduct the Centre County recount.

Joyce McKinley is the Director of Voter Registration and Elections for Centre County, Pennsylvania.  [Index, Ex. 5 (McKinley), 6:1].  Ms. McKinley testified as follows:

> Q.    [Plaintiff's counsel] Do you know whether or not they brought – well let me step back and ask.  Did you use any version or a portion of the Unity Software for that recount election.
>
> A.    [Ms. McKinley] Yes, sir.
>
> Q.    All right, what did you use.
>
> A.    We programed for that recount on the Unity for the office to be recounted only.
>
> Q.    And who did that programming?
>
> A.    Ms. Neidig, personnel of our office.
>
> *  *  *
>
> Q.    So when RBM arrived with the M650, whose version of Unity was being used then to do the recount, if any?
>
> A.    Ours was used.
>
> Q.    And was that Unity loaded on a local desktop or a laptop computer?
>
> A.    Yeah, I guess it's on a lap – no, it's a desktop.
>
> Q.    And do you know who operated the desktop computer with the Unity software on it during the recount?
>
> A.    Centre County's personnel, Jodi Neidig.
>
> Q.    Do you know whether anyone form RBM also operated the computer with the Unity software on it?
>
> A.    No.  No one else did.

[Index, Ex. 5 (McKinley), 24:16-25; 25:12-26:1].  The foregoing testimony was confirmed by Jodi Neidig, Assistant Director and Supervisor of Voter Registration and Elections for Centre County, Pennsylvania.  Ms. Neidig was present during the June 1, 2011 recount.  [Index, Ex. 6 (Neidig), 15:15-20].  She testified that she personally conducted the recount using Centre County's licensed copy of Unity Software loaded onto a computer owned by Centre County.  [*Id.*, 18:1-11; 19:33-6].  Ms. Neidig also testified the she personally did all coding for the recount election.  [*Id.*, 22:6-13].  Ms. Neidig testified that RBM and Jerry Hayek supplied and operated the M650 during the recount, and physically transferred memory data cards to and from Ms. Neidig for coding and reading.  [*Id.*, 17:14-18:9; 22:6-13].

The foregoing testimony demonstrates that the only specific allegations of the Amended Complaint are without foundation.  Had Plaintiff bothered to investigate the facts alleged in the Amended Complaint "on information and belief" prior to filing suit, Plaintiff would have discovered that its information and belief that RBM supplied and used an unauthorized copy of Unity Software to conduct the Centre County recount was incorrect.  However, Plaintiff made no attempt to address its assumptions and concerns with RBM prior to filing suit.  [Index, Ex. 3 (Mullen), ¶ 39].  Nor did Plaintiff contact Ms. McKinley or apparently anyone else at Centre County to determine whether there was any validity to Plaintiff's suspicions. [Index, Ex. 5 (McKinley), 119:15-22].  Even now, despite direct testimony to the contrary, Plaintiff continues to cite the Centre County recount, and Ms. McKinley and Ms. Neidig, as "evidence" that the Defendants copied Unity Software.

## **STATEMENT OF UNDISPUTED FACTS**

Pursuant to NELR 56.1(a)(1), Defendants assert for purposes of this Motion only, that there is no genuine issue to be tried with regard to the following material allegations of fact set

forth in the Amended Complaint.  In support of this Motion, Defendants are submitting unequivocal affirmative evidence refuting each of the material facts set forth in the Amended Complaint by establishing:

1.       On June 1, 2011, Defendants assisted Centre County, Pennsylvania election officials to conduct an election recount using a M650 Voting Machine that RBM borrowed from another county.  [Index, Ex. 2 (Hayek), ¶¶ 37-45; Ex. 3 (Mullen), ¶¶ 32-38; Ex. 5 (McKinley), 22:5-23:7; 24:8-26:1); Ex. 6 (Neidig), 15:15-22:13; Ex. 4 (McCabe), ¶¶1-9].

2.       The recount was conducted by Centre County election officials using Centre County's licensed copy of Unity Software installed on a computer owned and operated by Centre County.  [Index, Ex. 2 (Hayek), ¶¶ 37-45; Ex. 3 (Mullen), ¶¶ 32-38; Ex. 5 (McKinley), 22:5-23:7; 24:8-26:1); Ex. 6 (Neidig), 18:1-22:9; Ex. 4 (McCabe), ¶¶1-9].

3.       Defendants did not supply the Unity Software used to conduct the Centre County recount election conducted on June 1, 2011.  [Index, Ex. 2 (Hayek), ¶¶ 41; Ex. 3 (Mullen), ¶¶ 38; Ex. 5 (McKinley), 22:5-23:7; 24:8-26:1); Ex. 6 (Neidig), 15:15-22:13].

4.       Defendants did not use Unity Software to conduct the Centre County recount election conducted on June 1, 2011.  [Index, Ex. 2 (Hayek), ¶¶ 42-44; Ex. 5 (McKinley), 22:5-23:7; 24:8-26:1); Ex. 6 (Neidig), 15:15-22:13].

5.       Centre County election officials coded the definitions necessary for the recount using its licensed version of Unity Software, and at all times operated Unity during the recount.  [Index, Ex. 2 (Hayek), ¶¶ 42-44; Ex. 5 (McKinley), 22:5-23:7; 24:8-26:1); Ex. 6 (Neidig), 18:4-22:6-9]

6.       Defendants located, transported and operated the M650 during the recount.  When the recount was completed, Defendants returned the M650 to its owner.  [Index, Ex. 2 (Hayek),

¶¶ 37-45; Ex. 3 (Mullen), ¶¶ 32-38; Ex. 5 (McKinley), 22:5-23:7; 24:8-26:1); Ex. 6 (Neidig), 15:15-22:13; Ex. 4 (McCabe), ¶¶1-9].

7.      Defendants have never copied Unity Software.  [Index, Ex. 2 (Hayek), ¶ 17; Ex. 3 (Mullen), ¶ 20].

8.      Defendants do not posses, and have never possessed, a copy of Unity Software. [Index, Ex. 2 (Hayek), ¶ 18; Ex. 3 (Mullen), ¶ 19; see Ex. 5 (Neidig), 36:19-37:1].

9.      Defendants have never solicited customers or prospective customers, in Pennsylvania or elsewhere, by using copies of Unity Software.  [Index, Ex. 2 (Hayek), ¶ 20; Ex. 3 (Mullen), ¶ 21; see Ex. 5 (Neidig) 18:4-19:6; 22:6; 36:19-37:1].

10.     Defendant Hayek did not copy, remove, retain or use any property or materials belonging to ES&S, including any "trade secrets" or "Confidential Information," following his separation from ES&S.  [Index, Ex. 2 (Hayek), ¶¶ 22-27].

11.     Defendant Hayek never disclosed any "trade secrets" or "Confidential Information" acquired during Hayek's employment with ES&S to RBM or any third party. [Index, Ex. 2 (Hayek), ¶ 24; Ex. 3 (Mullen), ¶¶ 24-25].

12.     Defendants have never possessed, copied or used any "trade secrets" or "Confidential Information" that Defendant Hayek acquired during his employment with ES&S. [Index, Ex. 2 (Hayek), ¶ 24; Ex. 3 (Mullen), ¶¶ 27-28].

13.     Defendants have never represented that RBM is in any way affiliated with ES&S. [Index, Ex. 2 (Hayek), ¶¶ 32-36; Ex. 3 (Mullen), ¶¶ 29-31].

14.     Defendants have never represented that any of the services that RBM provides are sanctioned, approved, or certified by ES&S.  [Index, Ex. 2 (Hayek), ¶¶ 32-36; Ex. 3 (Mullen), ¶¶ 29-31].

15.    A search of the online public catalog maintained by the United States Copyright Office revealed no record of any copyright registration for "Unity Election Management System Software".  [Index, Ex. 1 (Degan), ¶¶ 4-5; Ex. 7].

16.    Written discovery concluded on issues relating to the Amended Complaint on July 18, 2014.  [Doc. #63]

17.    Plaintiff served its Initial Disclosures on August 31, 2012.  [Index, Ex. 8].

18.    Plaintiff served its Supplemental Answers to Hayek's Interrogatories on September 22, 2014.  [Doc. #81; Ex. 9].

19.    Plaintiff served its Supplemental Responses to Hayek's Requests for Production on September 22, 2014.  [Doc. #81; Ex. 10].

20.    Plaintiff served its Responses to RBM's First Set of Requests for Production on August 7, 2014.  [Ex. 11].

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Egan v. Wells Fargo Alarm Servs.*, 23 F.3d 1444, 1446 (8th Cir. 1994).  In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion.  *Dancy v. Hyster Co.,* 127 F.3d 649, 652 (8th Cir. 1997).  However, in order to withstand a motion for summary judgment, the nonmoving party must substantiate their allegations with "sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy." *Moody v. St. Charles County*, 23 F.3d 1410, 1412 (8th Cir.1994) (quoting *Gregory v. City of Rogers*, 974 F.2d

1006, 1010 (8th Cir.1992)).  "A mere scintilla of evidence is insufficient to avoid summary judgment."  *Id.*  Essentially the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52 (1986).  As this Court noted in *Schaefer v. Yocum,* 860 F.Supp.2d 958, 964 (D. Neb. 2012):

> In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. The mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; ***there must be evidence on which the jury could conceivably find for the nonmovant***. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.

*Id.* 860 F.Supp.2d, at 964 (citations omitted; emphasis added).  Here, where there is a lack of any evidence upon which a jury could conceivably find for the nonmovant on any of the five claims alleged in the Amended Complaint, summary judgment is proper.

## ARGUMENT

For the reasons set forth herein, there is no genuine dispute of material fact and Defendants are entitled to judgment as a matter of law on each of Plaintiff's five claims for relief.

## I.   DEFENDANTS SHOULD BE GRANTED SUMMARY JUDGMENT ON PLAINTIFF'S FIRST CLAIM FOR RELIEF ALLEGING COPYRIGHT INFRINGEMENT

Plaintiff's First Claim for Relief alleges that Defendants "unlawfully copied and used ES&S' Unity Software or otherwise reproduced written, magnetic media, or other documents, records or materials belonging to ES&S containing or constituting ES&S Confidential Information."  [Doc. #24, ¶ 27].  As will be discussed below, Plaintiff's claim that Defendants unlawfully copied its Unity Software is neither substantiated nor actionable.  However, before

addressing the merits of Plaintiff's infringement claim, it must first be noted that the Copyright Act does not make unauthorized "use" of copyrighted software unlawful or actionable.

The Copyright Act, 17 U.S.C. § 106, reserves certain exclusive rights in favor of a copyright holder, including the exclusive rights to copy, disseminate or create derivative works from copyrighted material. *Id.* However, the Copyright Act conveys no right to control use of copyrighted materials beyond those enumerated exclusive rights set forth in § 106. *Id. Sony Corp. of America v. Universal City Studios, Inc.,* 464 U.S. 417, 447 (1984); *Papa John's Intern., Inc. v. Rezko,* 446 F.Supp.2d 801, 810 (N.D. Ill. 2006)(holding that "unauthorized use" of copyrighted software could only give rise to a copyright claim if the "unauthorized use" consisted of copying, distributing or making derivative works of a copyrighted work).[3]  As the Court noted in the Order granting Defendants' Motion to Dismiss in part, and denying the Motion in part, "the use must conflict with one of the exclusive rights specifically conferred by the copyright statute, such as the right to reproduced copies of the work."[4]  [Doc. #23, at 5]. Accordingly, in order to prevail on its copyright infringement claim, Plaintiff must prove that Defendants copied or reproduced its copyrighted material.

Second, the Copyright Act protects only copyrighted works.  It provides no protection, and creates no statutory cause of action, for any alleged copying of other "written, magnetic

---

[3] In Papa Johns, supra, the court stated:

> It is unclear what plaintiffs mean by "making unauthorized use."  If plaintiffs are suggesting that defendants are continuing to use the ideas found in plaintiffs' copyrighted materials, such use is not a violation of the Copyright Act. The Act undeniably protects only the expression of ideas, not the ideas themselves. . . If plaintiffs are concerned with defendants' alleged failure to return the copyrighted material to Papa John's, such a grievance belongs within the contract claim, not a copyright claim." If, however, plaintiffs are attempting to allege that defendants have copied, disseminated, or prepared derivate works based on Papa John's copyrighted works, they may have a sustainable copyright violation claim.

[4] Because the Court determined that Plaintiff had sufficiently alleged that Defendants copied its Unity Software, the Court denied Defendants' Motion to Dismiss Plaintiff's First Claim for Relief.  [Doc. #23, at 5].  When Plaintiff filed its Amended Complaint, Plaintiff added the specific allegation that Defendants copied Unity Software to Plaintiff's First Claim for Relief.  [Doc. #24, at 7].

media, or other documents, records or materials belonging to ES&S containing or constituting ES&S Confidential Information," unless such materials are copyrighted. The Amended Complaint identifies no other copyrighted works that Defendants' allegedly copied. [Doc. #24]. Furthermore, Plaintiff failed to identify or disclose any other copyrighted materials allegedly copied by Defendants in discovery. [Index, Ex. 8; Ex. 9, Nos. 3-6]. Accordingly, the sole issue to be resolved regarding Plaintiff's First Claim for Relief is whether Defendants copied Unity Software.

### A. Plaintiff Cannot Proceed On A Claim For Copyright Infringement Unless It Registered Its Copyright Prior To Filing Suit

The Copyright Act requires registration before an owner can bring an action for infringement: "No civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." 17 U.S.C.A. § 411(a). The Supreme Court has held that the registration requirement is condition precedent to maintaining a claim for copyright infringement. *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157 (2010)("Section 411(a)'s registration requirement is a precondition to filing a copyright claim"). Failure to comply with the registration requirement precludes an action for infringement. *Business Audio Plus, L.L.C. v. Commerce Bank, NA*, 2011 WL 250670, at *2 (E.D. Mo. 2011)(dismissing copyright claim due to plaintiff's failure to register copyright, stating "[p]laintiff fails to meet § 411(a)'s statutory prerequisite, and thus cannot maintain its infringement claim"); *Mayo Clinic v. Elkin*, 2010 WL 5421322, at *5 (D. Minn. 2010)(granting summary judgment where plaintiff had not registered copyright).

In the instant case, Plaintiff did not plead a copyright registration number for Unity Software, or attach a copy of its copyright registration certificate to the Amended Complaint.

15

[Doc. #24]. Plaintiff failed to disclose any documents or information regarding any copyright registration for its "Unity Election Management System Software" in its Initial Disclosures, despite the fact that registration is a statutory perquisite to filing suit. [Index, Ex. 8]. Defendants sought specific information relating to Plaintiff's copyright claim in discovery, including a specific request for all documents evincing or relating to any copyright registration relating to Unity Software. [Index, Ex. 11, No. 26; Ex. 9, No. 1; Ex. 10, No. 6]. However, Plaintiff failed to produce any documents establishing the existence of any copyright registration for Unity. *Id.*

To the contrary, a search of the online public database maintained by the United States Copyright Offices by Defendants failed to return any record of any copyright registration for "Unity Election Management System Software." [Stmt. Undisputed Facts, ¶ 15].

The foregoing evidence presents a threshold question as to whether Plaintiff can establish the statutory prerequisite necessary for prosecuting a copyright infringement claim. Unless Plaintiff can offer proof that it registered its copyright prior to filing suit, Defendants are entitled to summary judgment as a matter of law on Plaintiff's First Claim for Relief.

**B.     *There Is No Evidence Substantiating Plaintiff's Claim That Defendants Copied Unity Software.***

Defendants affirmatively deny having ever copied Unity Software. [Stmt. Undisputed Facts, ¶¶ 2, 3, 7, 9, 10]. Defendants deny having used an unlawful copy of Unity Software to conduct the Centre County recount. *Id.* Defendants' testimony is supported and corroborated by the testimony of the Centre County election officials, who testified that the 2011 Centre County recount was conducted by Centre County officials using Centre County's licensed copy of Unity Software. [Stmt. Undisputed Facts, ¶¶ 2, 3, 7, 9, 10]. RBM assisted with the recount, but did not copy, supply or use Unity Software during the recount. *Id.* Both Centre County officials denied that Defendants used a separate copy of Unity Software for the 2011 recount, or at any other

time.  [Stmt. Undisputed Facts, ¶¶ 2, 4, 5, 9, 10].  The Centre County election officials further testified that Centre County employees did all of the coding using Unity Software for the 2011 recount.  [Stmt. Undisputed Facts, ¶ 5].

Having proffered affirmative evidence rebutting the allegations of the Amended Complaint with respect to Plaintiff's First Claim for Relief, the burden shifts to Plaintiff to proffer evidence demonstrating the existence of a genuine issue of material fact in order to overcome summary judgment.  However, Plaintiff's own discovery disclosures reveal that Plaintiff will be unable to identify any bona fide issue of fact, having failed to identify or disclose any such evidence in discovery.

Plaintiff's Initial Disclosures identified twenty-three (23) persons allegedly having discoverable information relating to Plaintiff's claims.  [Index, Ex. 8]  Twenty-two persons identified by Plaintiff are affiliated with Plaintiff or Defendants.  The only person identified by Plaintiff in its Initial Disclosures not affiliated with either party was Joyce McKinley, the Director of Elections for Centre County. *Id.*  As noted above, Ms. McKinley directly refuted Plaintiff's allegations during her deposition.  Plaintiff also identified fourteen categories of documents allegedly supporting its claims in its Initial Disclosures, consisting primarily of ES&S' policies, contracts and correspondence.  None of the documents identified by Plaintiff in its Initial disclosures establish that Defendants copied Unity Software.

Plaintiff's untimely supplemental answers to Hayek's Interrogatories were served on September 22, 2014.[5] [Stmt. Undisputed Facts, ¶ 16].  Therein, Plaintiff responded as follows (in pertinent part) to contention Interrogatories Nos. 3-5, which requested Plaintiff to identify all

---

[5] Defendants have separately moved for sanctions to bar Plaintiff from using any documents or information that was not timely disclosed in opposition to this Motion or at trial.  Defendants wish to preserve their Motion for Sanctions, and offer Plaintiff's supplemental responses for the limited purpose of demonstrating that Plaintiff apparently has no evidence with which to establish a genuine issue of fact.

facts, documents and witnesses supporting its contention that Defendants "unlawfully copied" or "used" Unity Software as alleged in paragraphs 19 and 27 of the Amended Complaint:

> With respect to "Unity Software" as inquired, please see documents bates labeled ESSvRBM 1-5.  ES&S will supplement when additional information is obtained.

[Index, Ex. 9, Nos. 3-5; Ex. 12].  The remainder of Plaintiff's interrogatory answers are non-responsive.  Plaintiff identified no other facts, documents or witnesses providing support for the allegation that Defendants copied or used pirated copies of Unity Software.[6]  As noted above, the documents identified by Plaintiff as ESSvRBM 1-5 consist of a newspaper article regarding the 2011 recount, and a copy of Hayek's Nondisclosure Agreement, which was attached to the Amended Complaint as Exhibit A.  [Index, Ex. 12].  The newspaper article does not make any mention of Unity Software, let alone establish that Defendants illegally copied Unity Software. *Id.*  Hayek's Nondisclosure Agreement is not probative of any fact other than the existence and terms of the Disclosure Agreement.

Similarly, Plaintiff's untimely supplemental responses to Hayek's Requests for Production also fail to substantiate Plaintiff's First Claim for Relief.  [Stmt. Undisputed Facts, ¶ 17].  Hayek's Request No. 8 sought production of "all documents and materials supporting [Plaintiff's] claim that Defendants unlawfully copied, reproduced or used any software or other property belonging to Plaintiff."  [Index, Ex. 10, No. 8].  Plaintiff responded verbatim as follows: "See the email of Dawn James attached and Bates labeled 37287-37288."  *Id.*  The sole document identified by Plaintiff in response to Request No. 8 is an email exchange between ES&S employee Dawn James, and Centre County election official Joyce McKinley.  [Index, Ex.

---

[6] Plaintiff's Supplemental Interrogatory Answer to Defendant Hayek's Interrogatory No. 2, served on September 22, 2014, lists two additional ES&S employees and Jodi Neidig as witnesses having knowledge of facts alleged in the Amended Complaint.  [Index, Ex 9].  As noted herein, Jodi Neidig, a Centre County election official, does not support the allegations of the Amended Complaint, but rather, directly refuted the allegations during her deposition on February 4, 2014.

13].   Therein, ES&S inquired whether Centre County would use RBM in the event another recount election.  *Id.*   Joyce McKinley emailed back the same day and indicated that Centre County would likely use RBM again in the event of another recount.   *Id.*   The email exchange makes no reference to Unity Software, nor supports Plaintiff's allegation that Defendant copied Unity Software.  *Id.*

Plaintiff served responses to RBM's Requests for Production on August 7, 2014.  [Stmt. Undisputed Facts, ¶ 18].  In Plaintiff's responses to Requests Nos. 6 through 11, which again sought documents supporting Plaintiff's copyright infringement claim, Plaintiff stated as follows: "Investigation and discovery is not yet complete.  "ES&S will supplement this response once the same is completed." [Index, Ex. 11, Nos. 6-11].  Written discovery ended July 18, 2014.  [Stmt. Undisputed Facts, ¶ 19].  After three years of discovery, Plaintiff could not identify or disclose rudimentary information supporting its First Claim for Relief.

**C.**    ***The Copyright Act Protects Only Copyrighted Materials.***

Plaintiff's Second Claim for Relief also alleges that Defendants "reproduced written, magnetic media, or other documents, records or materials belonging to ES&S containing or constituting ES&S Confidential Information."  [Doc. #24, ¶ 27].  As noted above, the Copyright Act protects only copyrighted works.   However, Plaintiff identified no other copyrighted materials in the Amended Complaint, or in its disclosures and discovery responses, allegedly copied by Defendants.  [Index, Ex. 8-11].  Defendants affirmatively deny having copied any materials belonging to Plaintiff.  [Stmt. Undisputed Facts, ¶¶ 7, 10, 12].

For each of the foregoing reasons, Defendants are entitled to summary judgment as a matter of law on Plaintiff's First Claim for Relief.   The only specific allegations pled in the Amended Complaint relate to the Centre County recount.   ES&S's unfounded speculation that RBM used unlawfully pirated Unity Software to conduct the Centre County recount was utterly

refuted and debunked by the Centre County officials under oath on February 4, 2014. [Stmt. Undisputed Facts, ¶¶ 1-5]. Had Plaintiff bothered to simply pick up the phone and ask RBM or the Centre County officials how the recount was conducted prior to filing suit, Plaintiff would have learned long ago that there was no factual support for its claim. [Index, Ex. 3, ¶ 39; Ex. 5, 119:15-22]. Yet, Plaintiff still clings to the Centre County newspaper story as evidence supporting its copyright claim, despite now having full knowledge of the sworn testimony of the Centre County election officials refuting Plaintiff's allegations. Plaintiff's copyright claim is simply without merit.

## II. DEFENDANTS SHOULD BE GRANTED SUMMARY JUDGMENT ON PLAINTIFF'S SECOND CLAIM FOR RELIEF ALLEGING VIOLATION OF THE NEBRASKA TRADE SECRETS ACT

Plaintiff's Second Claim for Relief alleges that during the period he was employed by ES&S, Defendant Hayek acquired information deemed to be "trade secrets" by ES&S. [Doc. #24, ¶¶ 32-33]. Plaintiff alleges that pursuant to his Nondisclosure Agreement, Defendant Hayek an ongoing duty "to maintain the secrecy of ES&S' trade secrets and to not use ES&S trade secrets." *Id.* Plaintiff alleges that since leaving its employ, Hayek misappropriated Plaintiff's trade secrets by wrongfully using and disclosing ES&S' trade secrets to third parties, including RBM, in violation of the Nebraska Trade Secret Acts, Neb. Rev. Stat. § 87-501 et seq. ("NTSA"). [Doc. #24, ¶¶ 32-33]. The Second Claim for Relief also alleges that RBM has wrongfully used and disclosed ES&S' trade secrets wrongfully obtained from Hayek in violation of the NTSA. [Doc. #24, ¶¶ 34-35].

The NTSA defines "trade secret" as "information, including, but not limited to, a drawing, formula, pattern, compilation, program, device, method, technique, code, or process that: (a) derives independent economic value, actual or potential, from not being known to, and

not being ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Neb. Rev. St. § 87-502(4).  To establish the existence of a trade secret under the Nebraska Trade Secrets Act, a plaintiff must show "(1) the existence of a trade secret  or secret manufacturing process, (2) the value and importance of the trade secret to the employer in conduct of its business, (3) the employer's right by reason of discovery or ownership to the use and enjoyment of the secret, and (4) the communication of the secret to the employee while he was employed in a position of trust and confidence and under circumstances making it inequitable and unjust for him to disclose it to others or to use it himself to the employer's prejudice." *Meylan Enters., Inc. v. W-S Indus. Servs., Inc.*, No. A-02-547, 2004 WL 291368, at *8 (Neb. Ct. App. Feb. 17, 2004) (not designated for permanent publication) (*citing Richdale Dev. Co. v. McNeil Co.*, 244 Neb. 694, 508 N.W.2d 853 (1993)); *Softchoice Corp v. MacKenzie*, 636 F. Supp. 2d 927, 936 (D. Neb. 2009).

If Plaintiff proves the existence of trade secret as defined by the statute, Plaintiff must then prove that the trade secret was "misappropriated" by the defendants.  "Misappropriation" for purposes of NTSA means:

(a) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(b) Disclosure or use of a trade secret of another without express or implied consent by a person who:

(i) Used improper means to acquire knowledge of the trade secret;

(ii) At the time of the disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was: (A) Derived from or through a person who had utilized improper means to acquire it; (B) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or (C)

> Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

> (iii) Before a material change of his or her position, knew or had reason to know that the information was a trade secret and that knowledge of it had been acquired by accident or mistake."

Neb. Rev. St. § 87-502(2). The Nebraska Trade Secrets Act defines "improper means" as "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." Neb. Rev. St. § 87-502(1). Plaintiff bears the burden of proving both the existence of a statutory trade secret, and misappropriation. *Softchoice Corp v. MacKenzie*, 636 F. Supp. 2d 927, 936 (D. Neb. 2009).

The Amended Complaint fails to specifically identify the "trade secrets" Defendants are alleged to have misappropriated. [Doc. #24, ¶¶ 31-37]. As this Court previously noted, Unity Software is the only secret that can be gleaned from the Amended Complaint:

> Although ES&S' complaint refers vaguely to other trade secrets that Hayek disclosed to RBM, the only secret actually alleged is the software. Therefore, if ES&S second claim is to survive, the information underlying the Unity Software must constitute a trade secret.

[Doc. #23, at 6]. Even assuming *arguendo* for purposes of this Motion that Plaintiff could establish that its Unity Software constitutes a trade secret under the NTSA, Plaintiff cannot establish that Defendants misappropriated Unity Software. Defendant Hayek denies taking, copying or having ever possessed Unity Software since leaving ES&S. [Stmt. Undisputed Facts, ¶¶ 7, 10-12]. Hayek also denies that he ever supplied or disclosed Unity Software to any third party, including RBM. *Id.* Defendants deny supplying or using pirated Unity Software in connection with the Centre County recount. [Stmt. Undisputed Facts, ¶¶ 2-4, 7-9]. The Centre County election officials corroborate Defendants' testimony and establish that the Centre County recount was conducted by Centre County election officials using Centre County's licensed copy

of Unity. [Stmt. Undisputed Facts, ¶¶ 4-5]. Plaintiff will again be hard pressed to rebut the foregoing evidence. Plaintiff failed to identify or produce any evidence demonstrating that the Defendants wrongfully misappropriated Unity Software. [Index, Ex. 8-11].

Plaintiff failed to identify or demonstrate the existence of any other "trade secret" that Defendants allegedly misappropriated in its Initial Disclosures. [Index, Ex. 8]. Plaintiff's discovery responses likewise fail to specifically identify any other "trade secrets," let alone disclose the factual basis supporting the statutory elements that Plaintiff must prove in order to establish the existence of a trade secret for purposes of the NTSA. [Index, Ex. 9, No. 10; Ex. 10, No. 7; Ex. 11, Nos. 30-34].

Finally, Plaintiff failed to identify or disclose any evidence substantiating Plaintiff's allegation that any "trade secret" was wrongfully "misappropriated" by Defendants. [Index, Ex. 8; Ex. 9, No. 10; Ex. 10, No. 7; Ex. 11, Nos. 30-34]. Plaintiff bears the burden of establishing both the existence of a "trade secret" and misappropriation in order to prevail under the NTSA. *Softchoice Corp., supra,* 636 F. Supp. 2d, at 936. Plaintiff failed to identify any factual support to establish either element. Moreover, Plaintiff will be unable to rebut Defendants' direct evidence to the contrary.

Defendant Hayek denies that he copied or retained any information, documents or materials belonging to ES&S when he left its employ, let alone any "trade secrets." [Stmt. Undisputed Facts, ¶ 10]. Defendant Hayek denies that he ever used or disclosed any such "trade secrets" to RBM. [Stmt. Undisputed Facts, ¶¶ 10-11]. Defendants deny using any trade secrets that Hayek allegedly acquired during his employment with ES&S. [Stmt. Undisputed Facts, ¶¶ 11-12].

Plaintiff's failure to identify any other "trade secrets" and its failure to identify or disclose any evidence to substantiate its claim that Defendants misappropriated Unity Software or any "trade secrets" demonstrates that Plaintiff will be unable to establish a claim arising under the NTSA. Plaintiff's Second Claim for Relief must therefore fail and Defendants are entitled to Summary Judgment as a matter of law.

## III. DEFENDANTS SHOULD BE GRANTED SUMMARY JUDGMENT ON PLAINTIFF'S THIRD CLAIM FOR RELIEF ALLEGING COMMON LAW CONVERSION

Plaintiff's Third Claim for Relief is based on common law conversion. [Doc. #24, ¶¶ 38-40]. The Amended Complaint alleges that ES&S "has received information that Hayek and RBM are in possession of and are using ES&S proprietary software in their business activities." [Doc. #24, ¶¶ 18-20]. The Amended Complaint alleges that Defendants' unlawful use and copying of Unity Software and "other ES&S property" is inconsistent with Plaintiff's property rights." [Doc. #24, ¶ 40].

Under Nebraska law, an actionable conversion is "any unauthorized act which deprives the owner of his property permanently or for an indefinite time." *Mapledge Corp. v. Coker*, 167 Neb. 420, 93 N.W.2d 369 (1958). "In conversion, plaintiff's burden is to prove a right of immediate possession at the time of conversion." *Otto Farms, Inc. v. First Nat. Bank of York*, 228 Neb. 287, 289-90, 422 N.W.2d 331 (1988); *Elander v. Kellogg Grain Co.*, 174 Neb. 782, 119 N.W.2d 522 (1963). Defendants are again entitled to summary judgment on Plaintiff's Third Claim for Relief.

First, as set forth above, Defendants categorically deny having ever copied or possessed Unity Software. [Stmt. Undisputed Facts, ¶¶ 7-8]. As noted above, Plaintiff failed to identify or disclose any facts or evidence to the contrary, demonstrating either that the Defendants copied

Unity Software, or ever possessed Unity Software.  [Index, Ex. 8; Ex. 11, Nos. 11-12; Ex. 9, No. 9; Ex. 10, No. 8].   On August 7, 2014, Plaintiff responded to a Request for Production asking Plaintiff to produce copies of all documents supporting the allegations set forth in Paragraph 39 of the Amended Complaint alleging conversion by stating "Investigation and discovery is not yet complete.  "ES&S will supplement this response once the same is completed."  [Index, Ex. 11, No. 12].

Secondly, Plaintiff failed to identify any other property in the Amended Complaint or Initial Disclosures that Defendants allegedly converted, and failed to identify or disclose any evidence substantiating the allegations in Plaintiff's Third Claim for Relief.  [Index, Ex. 8]. Defendant Hayek denies removing or copying any property or information belonging to ES&S when he terminated his employment.  [Stmt. Undisputed Facts, ¶ 10].  Defendants deny that Defendant Hayek disclosed any such property or information to RBM, and Defendants deny using any such information.  [Stmt. Undisputed Facts, ¶¶ 11-12].

## IV. DEFENDANT HAYEK SHOULD BE GRANTED SUMMARY JUDGMENT ON PLAINTIFF'S FOURTH CLAIM FOR RELIEF ALLEGING BREACH OF CONTRACT

Plaintiff's Fourth Claim for Relief alleges that Defendant Hayek breached his Nondisclosure Agreement by using and disclosing "Confidential Information" belonging to ES&S that was provided to him during his employment with ES&S.  [Doc. #24, ¶¶ 12-17; 43-45].   The Amended Complaint specifically alleges that Unity Software is "Confidential Information" subject to the Nondisclosure Agreement. [Doc. #24, ¶ 17].   The Amended Complaint fails to identify any other "Confidential Information" that Defendant Hayek was provided access to during his employment with ES&S.  During discovery, Plaintiff failed to identify or disclose facts establishing the existence of any other "Confidential Information"

allegedly disclosed by Defendant Hayek in violation of the Nondisclosure Agreement. [Index, Ex. 8; Ex. 11, Nos. 13; Ex. 9, No. 11; Ex. 10, No. 8].

Defendant Hayek denies that he copied or retained any documents, materials or property belonging to ES&S when left ES&S. [Stmt. Undisputed Facts, ¶¶ 10]. Defendant Hayek denies having ever copied, possessed or disclosed Unity Software to RBM or any third party. [Stmt. Undisputed Facts, ¶¶ 7-12]. Defendants deny supplying or using pirated Unity Software in connection with the Centre County recount. [Stmt. Undisputed Facts, ¶¶ 3-4, 7-9]. The Centre County election officials corroborate Defendants' testimony and establish that the Centre County recount was conducted by Centre County election officials using Centre County's licensed copy of Unity. [Stmt. Undisputed Facts, ¶¶ 2-5].

Hayek denies disclosing any "Confidential Information" to any third party, including RBM. [Stmt. Undisputed Facts, ¶¶ 10-11]. Hayek denies that he has ever used any "Confidential Information" since leaving ES&S. [Stmt. Undisputed Facts, ¶ 12]. Hayek denies that he violated the terms of the Nondisclosure Agreement. [Index, Ex. 2, ¶28].

Plaintiff will again be hard pressed to rebut the foregoing evidence. Plaintiff failed to identify or produce any evidence demonstrating that Defendant Hayek took, used, or disclosed any "Confidential Information." Plaintiff should be precluded from introducing any evidence not timely disclosed during discovery. In the absence of a genuine issue of material fact regarding Plaintiff's breach of contract claim, Defendant Hayek is entitled to summary judgment as a matter of law with respect to Plaintiff's Fourth Claim for Relief.

## V.   DEFENDANTS SHOULD BE GRANTED SUMMARY JUDGMENT ON PLAINTIFF'S FIFTH CLAIM FOR RELIEF ALLEGING DECEPTIVE TRADE PRACTICES

Plaintiff's Fifth Claim for Relief alleges generically that Defendants have engaged in conduct causing a likelihood of confusion regarding the affiliation, sponsorship, approval or

certification of services offered by Defendants.  [Doc. #24, ¶¶ 47-48].  However, the Amended Complaint fails to cite any factual allegations to support its Fifth Claim for Relief, but rather, simply parrots the language of the Uniform Deceptive Trade Practices Act.  In disclosures and discovery responses, Plaintiff has failed to disclose or identify any specific representations or instances of conduct allegedly giving rise to Plaintiff's Fifth Claim for Relief.  [Index, Ex. 8; Ex. 11, Nos. 14-15; Ex. 9, No. 12-13].

In order to prevail on its Fifth Claim for Relief, Plaintiff must prove that Defendants violated the Nebraska Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301 et seq., or the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 et seq. [Doc. #1, ¶¶ 39-43].  Nebraska Deceptive Trade Practices Act prohibits a broad panoply of deceptive trade practices, including passing of goods and services of another as one's own, confusing consumers as to the origin of the goods. *Midway Mfg. Co. v. Dirkschneider*, 571 F.Supp. 282 (D. Neb. 1983).  Facts demonstrating a likelihood of confusion in the marketplace is the touchstone of a Deceptive Trade Practices Act claim. *See Mutual of Omaha Ins. Co. v. Novak,* 648 F.Supp. 905 (D. Neb. 1986); *Midway Mfg. Co. v. Dirkschneider,* 573 F.Supp. 282 (D.Neb. 1983).  There must be a representation regarding the nature of goods or services and the representation must have been for characteristics or benefits that the goods or services did not have.  *State ex rel. Stenberg v. Consumer's Choice Foods*, 276 Neb. 481, 755 N.W.2d 583 (2008).

Defendants deny having ever represented that RBM is in any way affiliated with ES&S, or that any goods or services provided by RBM are sanctioned, approved or certified by ES&S. [Stmt. Undisputed Facts, ¶¶ 9, 13-14].  As noted above, Plaintiff failed to identify or disclose any instances that Defendants allegedly misrepresented the nature of their goods and services, or

caused any confusion in the marketplace. Plaintiff should be precluded from introducing any evidence not timely disclosed during discovery. In the absence of any genuine issue of material fact concerning Plaintiff's Fifth Claim for Relief, Defendants are entitled to Summary Judgment as a matter of law.

## **CONCLUSION**

For each of the reasons stated herein, Defendants respectfully request the Court to grant their Motion for Summary Judgment, and dismiss with prejudice, all claims asserted against the Defendants in the Amended Complaint, with costs taxed to Plaintiff, and any other relief deemed appropriate by the Court.

DATED: November 13, 2014.

RBM CONSULTING, LLC and GERALD G. HAYEK, Defendants.

*/s/ Michael S. Degan*
Michael S. Degan (#20372)
David M. Newman (#24549)
HUSCH BLACKWELL LLP
1620 Dodge Street, Suite 2100
Omaha, NE  68102
(402) 964-5000 Telephone
(402) 964-5050 Facsimile
mike.degan@huschblackwell.com
david.newman@huschblackwell.com

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2014, I electronically filed the above using the CM/ECF system which sent notification of such filing to the following:

| | |
|---|---|
| Michael C. Cox | mike.cox@koleyjessen.com |
| Daniel Fischer | dan.fischer@koleyjessen.com |
| David A. Yudelson | david.yudelson@koleyjessen.com |

/s/ *Michael S. Degan*