**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| ELECTION SYSTEMS & SOFTWARE, LLC, | CASE NO. 8:11 CV 438 |
| Plaintiff, | |
| v. | |
| RBM CONSULTING, LLC, and GERALD G. HAYEK, an Individual. | **BRIEF IN OPPOSITION TO RBM CONSULTING, LLC'S MOTION FOR SUMMARY JUDGMENT** |
| Defendants. | |
| RBM CONSULTING, LLC, | |
| Counterclaim Plaintiff, | |
| v. | |
| ELECTION SYSTEM & SOFTWARE, LLC, | |
| Counterclaim Defendant. | |

**INTRODUCTION**

Defendants' motion for summary judgment takes an impermissible blind eye to evidence that calls its conduct into question.  It solicits ES&S customers with false and misleading statements about RBM's ability to supply certified replacement parts for ES&S voting machines as well as RBM's ability to service and maintain such machines, despite that RBM does not have access to ES&S' certification and training for such work.  Hayek (a former employee of ES&S), one of RBM's independent contractors, failed to return a specialized tool kit customized for work on ES&S voting machines and

that included ES&S' proprietary firmware.  Furthermore, RBM obtains ES&S voting machines and then uses and or supplies them to customers despite that RBM is not authorized or licensed to use the firmware contained in such machines.  For these reasons, as more fully discussed below, ES&S respectfully asks that Defendants' motion for summary judgment be denied.

## DISCUSSION

RBM and Its Business Model

RBM is comprised of former ES&S employees—like Hayek—who seek to steal business from ES&S by soliciting ES&S customers to use RBM for service and maintenance to ES&S voting machines the customer has purchased from ES&S.  (*See* Filing No. 137-6).  RBM also seeks to provide election support services to these customers, and has both offered and used ES&S voting machines and proprietary firmware to service ES&S customers, without having a license to use such proprietary technology that is strictly controlled by ES&S through licensing.  (*Id.*) (*see also* Filing No. 137-2 at ¶ 9; Filing No. 48-2; Filing No. 67-4 at pp. 2-3).  For example, on the "Management Team" link of RBM's website, its three executives each list their prior experience as employees of ES&S as part of their qualification in this industry.  (Filing No. 137-6) (Dan McGinnis is the managing partner and held "key positions" including "Senior Vice-President and Manager" at ES&S; Todd Mullen held many "valued" positions, including serving as "Regional Vice-President of Sales" for ES&S; Keith McGinnis served as "Regional Vice-President of Sales" for ES&S).  ES&S frequently receives reports that RBM has solicited an ES&S customer to switch to RBM for the service and maintenance of the customers' ES&S voting machines.  (*See, e.g.*, Filing

No. 137-5 at ¶ 5; Filing No. 137-7 (Centre County is going with RBM); Filing No. 137-8 (RBM handling Centre County's maintenance); Filing No. 137-9 (Centre County signed 1 yr. with RBM while ES&S tried to get county to stay with ES&S); Filing No. 137-10 at 69:2-72:24 and Exs. 3 and 18 (RBM soliciting Centre County away from ES&S); Filing No. 137-11 (Allegheny County switching to RBM); Filing No. 137-12 (Allegheny County confirms RBM is the new vendor); Filing No. 137-13 (RBM—through Mullen—solicited customers in Ohio); Filing No. 137-14 (RBM submitted a quote in Colorado).

<u>Centre County Recount Election</u>

In 2011, ES&S learned through a newspaper article and related reports that RBM and Hayek had used an ES&S M650 voting machine to conduct a recount election for Centre County, Pennsylvania.  (Filing No. 48-2).  However, the story and photo in the Center Daily News article revealed facts that RBM either admits now or that are noticeably absent in, or disputed by, RBM's description of the recount election, to wit:

1.      The photographed showed, and the article described, that Center County used an ES&S M650 voting machine to conduct a recount election in May 2011.  (Filing No. 48-2).

2.      RBM—with and through Hayek—assisted Centre County in conducting the recount.  (Filing No. 48-2; Filing No. 75-7 at 22:5-24; 24:10-15; 27:8-29:1)

3.      RBM admits that it assists customers with the use of Unity to program voting machines for elections.  (Filing No. 77-4 at pp. 7-8).

4.      In fact, Hayek—on behalf of RBM—was the sole operator of the M650 used in the recount that day.  (Filing No. 75-7 at 24:10-15).  Hayek also uploaded the election coding from Unity into the M650.  (Filing No. 137-16 at 17:14-25; 22:6-15).

5.      Hayek—again on behalf of RBM—provided the M650 to use in the recount.  (Filing No. 75-7 at 27:8-29:1) (explaining that Hayek arrived with the M650 in a van and left with it again after the recount)(*see also* Filing No. 137-15) (Centre County election director confirming county would use RBM, which was bringing in "their" M650 to Centre County for the recount).

6.      RBM states that it "borrowed" the M650 from another county (Filing No. 115 at p. 10), but neither RBM nor Centre County were licensed to posses or operate the firmware and software on the M650, nor was any county that allegedly "loaned" it for such purpose authorized to do so.  (Filing No. 137-2 at ¶ 9).  The M650 operates on firmware and software that is confidential, proprietary, and trade secret information of ES&S.  (Filing No. 137-2 at ¶ 9; Filing No. 137-3 at ¶ 9).

7.      In fact, ES&S' contracts with customers expressly prohibit such "use" by others unless authorized by ES&S in writing, which it did not do here.  (Filing No. 67-4 at pp. 2-3; Filing No. 137-2 at ¶¶ 6 and 9; Filing No. 137-3 at ¶¶ 6 and 9).

Based on this information, both at the time of the Centre Daily News Article and still true at the time of Defendants motion for summary judgment, ES&S has valid claims against Defendants.  At the very least, these facts put RBM's conduct at issue such that it cannot prevail on summary judgment.

Statement of Material Facts

In addition to the above, there is ample evidence to dispute what Defendants assert is undisputed in its motion for summary judgment. ES&S responds as follows pursuant to NECivR 56.1(b)(1) to Defendants' assertion of undisputed facts (Filing No. 115 at pp. 9-12), and for ease of reference, ES&S will utilize the same paragraph numbers in this section as those used by Defendants in their brief:

1.    Denied. Defendants did more than just "assist" Centre County, Pennsylvania, in the recount election of May 2011. RBM provided the ES&S M650 voting machine without a license to use the firmware and software on it, and Hayek was the sole operator of the M650 during the recount election, rather than any employee of the county. (Filing No. 75-7 at 22:5-24; 24:10-15; 27:8-29:1).

2.    Denied. As discussed in paragraph 1 above, Hayek was the sole operator of the M650 voting machine used for the recount election, and Hayek provided the M650 as promised by RBM to Centre County without license or authorization by ES&S to do so. (*Id.*)

3.    Admitted.

4.    Denied. While Centre County lawfully possessed a copy of Unity Software, it was not licensed or authorized to use such software to program the M650 because neither Centre County nor Defendants had a license to use the M650, nor did the county who allegedly loaned it to RBM have license to do so. (Filing No. 137-2 at ¶¶ 6 and 9; Filing No. 173-3 at ¶¶ 6 and 9).

5.    Denied. While Centre County officials coded the election using the county's copy of Unity (but for which it was not licensed to code the M650), the Centre

County deposition was clear that it was *solely* Hayek—on behalf of RBM—who provided the M650 without license to do so, uploaded the coding into the M650, and operated the M650 for the recount.  (Filing No. 75-7 at 22:5-24; 24:10-15; 27:8-29:1 and Filing No. 137-16 at 17:14-25 and 22:6-15).

6.     Admitted (though ES&S has no way to verify that Defendants "returned the M650 to its owner").  ES&S affirmatively states that neither such "owner" nor RBM or Hayek had license to use the M650 or the software/firmware on it in this way.  (Filing No. 137-2 at ¶¶ 6 and 9).

7.     Denied, because Hayek—on behalf of RBM—solely utilized the coding from Unity to program the M650 for the 2011 recount.  (Filing No. 75-7 at 22:5-24; 24:10-15; 27:8-29:1 and Filing No. 137-16 at 17:14-25 and 22:6-15).

8.     Unknown to ES&S at this time.  ES&S has moved to compel an inspection of the ES&S voting machines in Defendants' possession because Defendants have refused all access and inspection of the same.  Unity is required to program any ES&S voting machine for a particular election.  (Filing No. 137-3 at ¶ 5; Filing No. 137-1).

9.     Denied.  Defendants' business model is primarily geared towards soliciting ES&S' customers and marketing that RBM personnel is authorized, trained, or certified to maintain and service ES&S voting machines.  (*See, e.g.*, Filing No. 137-6; Filing No. 137-10 at 69:5-72:24 and Exs. 3 and 18; Filing No. 137-5 at ¶ 5; Filing No. 137-7 (Centre County is going with RBM); Filing No. 137-8 (RBM handling Centre County's maintenance); Filing No. 137-9 (Centre County signed 1 year contract with RBM while ES&S tried to get county to stay with ES&S); Filing No. 137-10 at 69:2-72:24 and Exs. 3 and 18 (RBM soliciting Centre County away from ES&S); Filing No. 137-11 (Allegheny

County switching to RBM); Filing No. 137-12 (Allegheny County confirms RBM is the new vendor); Filing No. 137-13 (RBM—through Mullen—solicited customers in Ohio); Filing No. 137-14 (RBM submitted a quote in Colorado).

10.     Denied.  Hayek failed to return a specialized tool kit customized for work on ES&S voting machines, and which tool kit included ES&S firmware. (Filing No. 137-4 at ¶¶ 5-8).

11.     Denied.  Same response as paragraph 10.

12.     Denied.  Same response as paragraph 10, as well as RBM's provision of operable ES&S voting machines to ES&S customers for use as "extra" or "spare" voting machines in elections, without license or authorization to use the firmware and software on such machines.  (*See, e.g.*, Filing No. 137-17 at 61:22-64:19 or Filing No. 67-2 at same).

13.     Denied.  ES&S customers have reported that RBM has represented its ability to service and maintain ES&S voting machines purchased by that customer from ES&S, despite that RBM employees do not attend, and are not eligible to attend, training seminars and materials about ES&S voting machines and its constantly updated and evolving technology.  Filing No. 137-5 at ¶ 5; Filing No. 137-7 (Centre County is going with RBM); Filing No. 137-8 (RBM handling Centre County's maintenance); Filing No. 137-9 (Centre County signed 1 year contract with RBM while ES&S tried to get county to stay with ES&S); Filing No. 137-10 at 69:2-72:24 and Exs. 3 and 18 (RBM soliciting Centre County away from ES&S); Filing No. 137-11 (Allegheny County switching to RBM); Filing No. 137-12 (Allegheny County confirms RBM is the new vendor); Filing No. 137-13 (RBM—through Mullen—solicited customers in Ohio);

Filing No. 137-14 (RBM submitted a quote in Colorado; Filing No. 137-3 at ¶¶ 10-11; Filing No. 137-4 at ¶¶ 8-10).

14.     Denied.  Same response as paragraph 13.

15.     Denied.  Unity was described as "Election administration and control model system design" at the time of copyright registration in 1997, 2004, and 2005. Use of "Unity" as a trademark did not begin until after such initial copyright registration had already occurred in 1997.  (Filing No. 137-2 at ¶ 5).

16.     Denied.  There are pending motions to compel regarding discovery on the Amended Complaint, filed on or before the deadline to file such motions, that prevent discovery for this case from being closed.  (Filing Nos. 65 and 85).   One such pending motion is ES&S' motion to compel inspection and documents (Filing No. 65).  Centre County testified that RBM provided the M650 but that it did not know where RBM obtained the machine or where Hayek took the machine when he left.  (*see also* Filing No. 137-15 at p. 1).  It also testified that RBM provided "extra" ES&S M100 voting machines for the 2012 presidential election.  (Filing No. 137-17 at 61:22-64:19 or Filing No. 67-2 at same).  On this information, ES&S sought an inspection of ES&S voting machines and electronically stored information that relates to RBM providing any ES&S-manufactured voting machine to a customer (which would necessarily include any copy of Unity) that is in RBM's possession, as well as documents pertaining to RBM's practice of providing ES&S voting machines to customers, but RBM refused to respond to any such request.  Accordingly, ES&S' motion to compel is pending.  ES&S sought the discovery well before the close of discovery, and it brought the motion to compel well ahead of the deadline to do so.  Accordingly, ES&S needs further information

denied to it in discovery in order to fully respond to Defendants' motion for summary judgment.  (Filing No. 137-1 at ¶¶ 20(a) – (f)).

      17.    Admitted.

      18.    Admitted.

      19.    Admitted.

      20.    Admitted.

<u>Brief Summary of "Certification"</u>

"Certification" has a particularized meaning in the voting industry, under the Help America Vote Act (HAVA).  There are essentially two levels of certification:  the federal level and the state level.  (Filing No. 137-23 at ¶ 3).  The federal level is governed by the Election Assistance Commission ("EAC"), which promulgates standards for voting systems. (Filing No. 137-23 at ¶ 4).  This level is a rigorous review, analysis, and testing of a proposed voting system, including the hardware, software, and firmware, by an accredited voting system test lab (VSTL). (*Id.*)  The certification process is time and cost intensive for a manufacturer, but any voting system must be approved before it can be used. (*Id.*)  A "certified" voting system has been tested by a federally accredited VSTL and has successfully met all requirements of the federal voting system standards and/or guidelines. (*Id.*)

ES&S is registered with the EAC as a manufacturer of voting systems, which required ES&S to meet the requirements of the EAC's Testing and Certification Program. (Filing No. 137-23 at ¶ 5)  RBM is not, and has never been, registered with the EAC. (*Id.*)  Notably, the EAC holds manufacturers accountable for their certified

voting systems through a Quality Monitoring Program, and problems can result in the voting system being "decertified." (*Id.*)  Decertification means that most states will refuse to use the decertified systems, and it can also mean a loss of trust in such a voting system and/or the manufacturer depending on the reason for the decertification. (*Id.*)

Once a voting system is certified at the federal level by the EAC, it moves to certification at the state level. (Filing No. 137-23 at ¶ 6)  When any ES&S voting system is examined for certification at the state level, the process includes a demonstration that the voting system complies with the state's statutory requirements for voting in that state. (*Id.*)  Accordingly, there is a state-specific component to any election system certified for use in a particular state, and many states differ on their requirements.  (*Id.*) It is such final version that is certified for use in that state. (*Id.*)  Only "certified" components may be used in a certified system, and any change to the system must be approved before it is implemented. (*Id.*)

Certification costs ES&S millions of dollars to complete, as each voting system must be certified and made specific at the state level. (Filing No. 137-23 at ¶ 7).  RBM has never incurred such costs, but yet seeks to unlawfully compete with ES&S by using its certified voting machines and passing itself off as certified.


Summary Judgment Standard

ES&S invokes the following principles.  Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Sensient*

*Technologies Corp. v. SensoryEffects Flavor Co*., 613 F.3d 754, 760 (8th Cir. 2010) (quoting Fed.R.Civ.P. 56(c)). In considering a motion for summary judgment, the court does not weigh the evidence, does not make credibility determinations, and does not attempt to discern the truth of any factual issue. *Great Plains Real Estate Development, L.L.C. v. Union Central Life Ins. Co*., 536 F.3d 939, 943-44 (8th Cir. 2008).

Furthermore, the Court must view all evidence and reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The substantive law determines which facts are critical and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Summary judgment "is an extreme remedy, and one which is not to be granted unless the movant has established his right to a judgment with such clarity as to leave no room for controversy and that the other party is not entitled to recover under any discernible circumstances."  *C. Line, Inc. v. City of Davenport*, 957 F.Supp.2d 1012, 1023 (S.D. Iowa 2013); *Hunt v. Magnell*, 758 F.Supp. 1292, 1296 (D. Minn. 1991)(citing Fed.R.Civ.P. 56(c) and *Loudermill v. Dow Chemical Co*, 863 F.2d 566, 571 (8th Cir. 1988)); *Green v. Box Butte General Hosp*, 284 Neb. 243, 252, 818 N.W.2d 589, 597 (2012) ("As a procedural equivalent to a trial, a summary judgment is an extreme remedy because a summary judgment may dispose of a crucial question in litigation or the litigation itself, and may thereby deny a trial to the party against whom the motion for summary judgment is directed.").

"If the record discloses a possibility that a genuine issue of fact exists, the motion must be resolved against the moving party." *CECO Corp. v. U.S.,* 554 F. Supp. 569, 571 (D. Minn. 1982) (citing *Johnson Farm Equipment Co. v. Cook*, 230 F.2d 119 (8th

Cir. 1956); *Caylor v. Virden*, 217 F.2d 739 (8th Cir. 1955); *Union Transfer Co. v. Riss &*
*Co.*, 218 F.2d 553 (8th Cir. 1955); *Traylor v. Black, Civallo & Bryson, Inc.*, 189 F.2d 213
(8th Cir. 1951)).


Copyright Claim

Defendants challenge to ES&S' copyright claim is based on (1) their assertion
that Unity is not registered with the U.S. Copyright office, which is a prerequisite to filing
suit for copyright infringement and and (2) certain testimony in the Centre County
deposition.  Defendants' arguments fail its burden on summary judgment however.  As
to the first point, the affidavit of Steve Bolton, who is responsible for intellectual property
at ES&S, explains that Unity was not called "Unity" at the time of initial copyright
registration in 1997.  At that time, and in fact at all times related to copyright registration,
Unity was referred to as "election administration and control module system design,"
which is descriptive of Unity's function.  Mr. Bolton also provides the copyright
registration numbers in his declaration.  (Filing No. 137-2 at ¶ 5).

As to the second point, Defendants selectively cite to the deposition, and ignore
portions that raise questions of fact on this issue.  Naturally on summary judgment,
RBM's entire argument is based on what it claims is "undisputed," particularly from the
Centre County deposition.  Yet, RBM omits certain critical facts that were also revealed
by the testimony in that deposition.  For example, RBM provided the M650, and it and
the county used it without license to do so, and during which time Hayek was the sole
operator of the M650.  (Filing No. 75-7 at 22:5-24; 24:10-15; 27:8-29:1; Filing No. 137-2

at ¶¶ 6 and 9). Also, Hayek loaded the coding prepared in Unity to the M650. (Filing No. 137-16 at 22:6-15)

To be clear, the M650 will not operate without firmware or without coding specific to each election in which it is used. ((Filing No. 137-3 at ¶ 5). Unity is used to program, or "code," a particular election into the M650. (*Id.*) (*see also* Filing No. 137-17 at p. 4). The coding is uploaded into the firmware already installed on the M650. (Filing No. 137-3 at ¶¶ 5-6). Notably, Centre County was clear that only Hayek—on behalf of RBM—uploaded the coding to operate the unlicensed M650 used for the Centre County recount election. (Filing No. 137-16 at 22:6-15). Furthermore, RBM admits that it regularly assists customers in the use of Unity. (Filing No. 77-4 at p. 7-8). These facts reveal that there is still a dispute as to whether RBM has infringed ES&S' copyright, particularly in light of the summary judgment standard with which such evidence is reviewed in this procedural posture.

Trade Secrets Claim

A "trade secret" under Nebraska's Trade Secrets Act is defined as "information, including, but not limited to, a drawing, formula, pattern, compilation, program, device, method, technique, code, or process that: (a) Derives independent economic value, actual or potential, from not being known to, and not being ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." *First Express Services Group, Inc. v. Easter*, 286 Neb. 912, 924, 840 N.W.2d 465, 474 (2013); Neb.Rev.Stat. § 87-502(4).

"To succeed on its misappropriation of trade secrets claim, [plaintiff] must prove: (1) the existence of a trade secret …, (2) the value and importance of the trade secret to [plaintiff] in the conduct of [its] business, (3) [plaintiff's] right by reason of discovery or ownership to the use and enjoyment of the secret, and (4) the communication of the secret to the employee while he was employed in a position of trust and confidence and under circumstances making it inequitable and unjust for him to disclose it to others or to use it himself to the employer's prejudice." *West Plains, L.L.C. v. Retzlaff Grain Co. Inc.*, 927 F.Supp.2d 776, 783 (D. Neb. 2013).

Here, ES&S' firmware qualifies as a trade secret. (Filing No. 137-2 at ¶¶ 6-8; Filing No. 137-3 at ¶¶ 6-8). So is the programming code for Unity. (*Id*.) Defendants misappropriated—or at least there is a question of fact as to whether the Defendants misappropriated—ES&S' trade secrets by Hayek's failure to return the tool kit that included firmware and Defendants' use of the M650 voting machine (and all firmware therein) to conduct the May 2011 election for Centre County.  First, Hayek told ES&S that he was leaving its employ to spend more time with family but he kept his customized tool kit (which included firmware) because he stated he would do some contract work for ES&S.  However, Hayek would not respond to calls from ES&S, and ES&S learned that Hayek began working for its competitor, RBM, servicing ES&S voting machines for customers RBM solicited away from ES&S for that type of work.  (Filing No. 137-4 at ¶¶ 5-8).  Second, Defendants used ES&S' M650 without authorization or

license to utilize the firmware on the machine.[1]   These facts reveal that RBM cannot satisfy its burden to obtain summary judgment.

Conversion

Conversion is "any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights." *Terra Western Corp. v. Berry and Company*, 207 Neb. 28, 31, 295 N.W.2d 693, 696 (1980) (citations omitted). It is "incumbent upon the plaintiff, in an action for conversion, to establish a general or special ownership in certain property." *First National Bank in Mitchell v. Kurtz*, 232 Neb. 254, 260, 440 N.W.2d 432, 436 (1989), *superseded by rule, on other grounds,* by *Pribil v. Koinzan*, 11 Neb.App. 199, 647 N.W.2d 110 (2002). Under Nebraska law, conversion is "an unauthorized assumption and exercise of the right ownership over goods or chattels belonging to another to the alteration of their condition or the exclusion of the owner's rights." *Terra Western,* 207 Neb. at 31, 295 N.W.2d at 696 (citing 89 C.J.S. Trover & Conversion § 1 (1955)).

Here, there is no dispute that ES&S owns its firmware, and that it licenses such firmware for a price. (Filing No. 137-2 at ¶ 6; Filing No. 137-3 at ¶ 6).   However, Defendants attempt to blur the line between the copyright claim and the other claims by aruging that if they did not "possess" Unity, then there could be no conversion.   Unlike the copyright claim, however, a conversion claim is not limited to intellectual property that is registered as a copyright with the U.S. Copyright Office.   Conversion can include *any* property.   Accordingly, even if RBM claims that it did not possess Unity, it did

---

[1] ES&S also discovered in the Centre County deposition that RBM was purchasing used ES&S voting machines and offering operating machines to customers as "extra" voting machines for larger elections.  (Filing No. 67-2 at 61:22-64:9).  Yet RBM does not have a license to use the firmware on those machines either.  (Filing No. 137-2 at ¶ 9).

possess and did use ES&S' firmware when it used and operated the M650 to conduct the May 2011 recount election for Centre County.  As for another distinction important in considering the conversion claim on summary judgment, even if it was undisputed that Defendants have not *copied* the Unity program, there would still remain a dispute over whether Defendants are *using* Unity or <u>any other ES&S property</u> without a right to do so.  As discussed above, ES&S has provided evidence to show that RBM is doing so, as well as supplying extra ES&S-voting machines to ES&S customers.  Furthermore, Defendants' reliance on *Otto Farms* and *Elander* is misplaced or overstated in this context.  Those cases focus on the co-mingling of property, which in both cases focused on the issue of identifying property in the context of commingled grain.  There is no commingling here, however.  RBM has simply used ES&S' intellectual property for its own benefit and without license or authorization to do so.

<u>Breach of Contract</u>

To recover in an action for breach of contract, plaintiff must show he and defendant entered into a contract, the terms of that contract, breach of the contract, that the beach was the proximate cause of some damage to plaintiff and the nature and extent of that damage. *Sindelar v. Canada Transport, Inc.*, 246 Neb. 559, 566, 520 N.W. 203, 209 (1994); *Henriksen v. Gleason*, 263 Neb. 840, 643 N.W.2d 652 (2002) ("the plaintiff must plead and prove the existence of a promise, its breach, damage and compliance with any conditions precedent that activate the defendant's duty.").

In his contract with ES&S, Hayek acknowledged that to permit him to perform his employment duties, he was or would be provided "Confidential Information," as that term is defined in the contract,

> that may include, without limitation, information about products and product lines, customers and prospective customers, vendors and suppliers, pricing, software (including, without limitation, source and object form, screen displays, and formats, program structure, sequent and organization, and audio-visual-elements of such software, listings thereof and documents related thereto), trade secrets, financial and accounting date, personnel and compensation, data processing and communications, technical date, marketing strategies, research and development of new or improved products and services and know-how regarding the business of ES&S and its products and services (including, without limitation, ballot stock and related methodologies (hereinafter collectively referred to as "Confidential Information")…

(Filing No. 24 at p. 14). Hayek then agreed in the contract no to disclose, use, copy or remove Confidential Information. (*Id.*) For the reasons discussed above regarding conversion, there is a question of fact as to whether Hayek breached his contract with ES&S. He never returned his tool kit, which included firmware, when he stated that he was leaving ES&S to spend more time with family but then began working for RBM shortly thereafter.


Deceptive Trade Practices

In Nebraska, the Uniform Deceptive Trade Practices Act is found at Neb. Rev. Stat. §§ 87-301 to 87-306. "The key concept is that the evil sought to be eliminated by trade name protection is confusion." *ADT Security Services, Inc. v. A/C Security Systems, Inc*., 15 Neb. App. 666, 688, 736 N.W.2d 737, 760 (internal quotation marks omitted; citing to *Dahms v. Jacobs*, 201 Neb. 745, 745, 272 N.W.2d 43, 44 (1978)). Plaintiff has the burden to show "whether the likelihood of such confusion exists. The

likelihood of confusion in the use of trade names can be shown by presenting circumstances from which courts might conclude that persons are likely to transact business with one party under the belief they are dealing with another party." *Id.*   There no precise rules to determine whether trade name confusion either exists or is likely to arise.   However, among the issues to be considered are the following:  "(1) degree of similarity in the products offered for sale; (2) geographic separate of the two enterprises and the extent to which their trade areas overlap; (3) extent to which the stores are in actual competition; (4) duration of use without actual confusion; and (5) actual similarity, visually and phonetically, between the two trade names." *Id.* at 689, 736 N.W.2d at 760 (citing *Equitable Bldg. & Loan v. Equitable Mortgage*, 11 Neb. App. 850, 861, 662 N.W.2d 205, 214 (2003)).   Pennsylvania's Deceptive Trade Practice Act is similar in its prohibitions and elements.  *See* Pennsylvania Unfair Trade Practices and Consumer Protection Law, P.S. §§ 201-1 *et seq*.

RBM's business model is to solicit customers away from ES&S for maintenance and service work as well as certain election support activities.  ES&S has been informed and has observed—and as evidenced by RBM itself—that RBM assures ES&S customers that RBM can service and maintain ES&S voting machines, that it can supply certified parts for ES&S voting machine, and that it often touts that it is comprised of former ES&S employees.  (Filing No. 137-6 at p. 3; Filing No. 137-5 at ¶ 5; Filing No. 137-10 at 69:2-73:2 and Exs. 8 and 18; Filing No. 137-11).   RBM asserts that it does so by the use of obtaining used machines that it cannibalizes for parts. (Filing No. 97 at p. 3).   However, ES&S disagrees and explains that such cannibalization does not automatically provide the certification needed in a particular state.  Cannibalizing parts

from a voting machine acquired in one state may or may not meet the certification standards for a replacement part in another state because states differ on what voting machine or system is certified and what configuration that certification takes. (*See, e.g.*, Filing No. 137-18; Filing No. 137-19; Filing No. 137-20 at p. 2; Filing No. 137-21 at pp. 4-13 and 29; Filing No. 137-22).

Furthermore, ES&S regularly trains and certifies its service personnel, providing updates regarding existing technologies and information about new and upcoming technologies. (Filing No. 137-4 at ¶¶ 9-10). ES&S has a certification program for its service and maintenance workers. (*Id.*) Such workers receive regular, specialized technical training from ES&S for repairing, servicing, and maintaining ES&S voting machines. (*Id.*) These trainings and certifications are provided only to ES&S employees and a small number of large (by population) customers that have one or two in-house service technicians. (*Id.*) These technicians are trained and certified by ES&S and are under contract not to use or disclose the information provided to them as part of the aforementioned training. (*Id.*) Training for service and maintenance workers is ongoing because ES&S routinely updates and improves its existing technologies(hardware, firmware, and software) as well as improves continuing to create new and innovative technologies. (*Id.*) A former employee of ES&S, such as Hayek or any other RBM representative who claims former affiliations with ES&S, would not have access to such continuing training. (*Id.*) Nonetheless, RBM suggests that it is qualified to work on ES&S voting machines, which at least implies a current connection, affiliation, or certification which RBM does not have and which can mislead customers with respect to the same. As *former* ES&S employees, Defendants do not have access to the ongoing

and updated trainings for ES&S' evolving technologies, nor do they have access to certified parts from ES&S, but Defendants are making such representations in the market.

As another example, ES&S learned that RBM has made representations to customers that RBM was a "certified DS200 printer." (Filing No. 137-5 at ¶ 5). The DS200 is an ES&S voting machine, and ES&S partners with specific printers to prepare and print the ballots used in the DS200. (*Id.*) Neither RBM nor any of its known contractors are such printing partners with ES&S. (*Id.*)

Defendants either state or imply that they can provide appropriate maintenance and service. However, as *former* ES&S employees, Defendants do not have access to the ongoing and updated trainings for ES&S' evolving technologies. RBM and its personnel do <u>not</u> have access to ES&S' training programs, nor do they have access to certified replacement parts manufactured and sold by ES&S. Accordingly, RBM is misleading others when it suggests that it can. RBM ignores the real and material risk of a non-certified part being used from a cannibalized machine from a different state, and it misleads customers into this risk by suggesting that it can provide certified parts from ES&S to which it has no actual access.


**CONCLUSION**

RBM does business by soliciting ES&S customers and using ES&S' intellectual property without license to do so. Under the close scrutiny of the summary judgment standard, RBM is not entitled to judgment as a matter of law because the record shows materials disputes of fact as to RBM's conduct and what RBM claims it is legitimately

doing.  For these reasons stated herein, ES&S respectfully asks that RBM's motion for summary judgment be denied in its entirety.

Respectfully submitted this 19th day of December, 2014.

ELECTION SYSTEMS & SOFTWARE,
LLC., Plaintiff/Counterclaim Defendant,

By: *s/ Daniel J. Fischer*
_____
Michael C. Cox, #17588
Daniel J. Fischer, #22272
KOLEY JESSEN P.C., L.L.O.
One Pacific Place, Suite 800
1125 South 103rd Street
Omaha, NE  68124-1079
(402) 390-9500
(402) 390-9005 (facsimile)
Michael.Cox@koleyjessen.com
Dan.Fischer@koleyjessen.com

Attorneys for Plaintiff/Counterclaim
Defendant.

## CERTIFICATE OF SERVICE

On this 19th day of December, 2014, I electronically filed the foregoing with the Clerk of the U.S. District Court using the CM/ECF system which sent notification of such filing to all CM/ECF participants.

*s/ Daniel J. Fischer*
_____
Daniel J. Fischer