IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ELECTION SYSTEMS & SOFTWARE, LLC,<br><br>          Plaintiff,<br><br>vs.<br><br>RBM CONSULTING, LLC, and GERALD G. HAYEK,<br><br>          Defendants.<br><br>―――――――――――――――<br><br>RBM CONSULTING, LLC,<br><br>          Counterclaim Plaintiff,<br><br>vs.<br><br>ELECTION SYSTEMS & SOFTWARE, LLC,<br><br>          Counterclaim Defendant. | Case No. 8:11-cv-00438 |

**REPLY BRIEF IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Prepared and Submitted By:

Michael S. Degan, NE #20372
HUSCH BLACKWELL LLP
13330 California St., Suite 200
Omaha, NE 68154

ATTORNEYS FOR DEFENDANTS

## INTRODUCTION

Plaintiff Election Systems & Software LLC ("ES&S") commenced this action on December 20, 2011, alleging that RBM Consulting LLC ("RBM") and Gerald Hayek ("Hayek") (collectively referred to herein as "Defendants"), copied and misappropriated Plaintiff's proprietary and copyrighted Unity Software. [Doc. #1]. From the outset, Defendants denied that they ever copied, distributed or otherwise misappropriated Defendants' Unity Software. After discovery closed following three years of litigation, Defendants moved for summary judgment pursuant to Fed. R. Civ. P. 56 on all five counts asserted in the Amended Complaint. [Doc. #112]. In support of its Motion, Defendants submitted competent evidence denying each of the material allegations of the Amended Complaint, and demonstrated that Defendants were entitled to judgment as a matter of law. [Doc. #113, #114].

In opposition to the Motion for Summary Judgment, Plaintiff failed to produce any evidence supporting the allegations of the Amended Complaint that Defendants copied or misappropriated its Unity Software. [Doc. #136]. Plaintiff did not object to any of the evidence offered by Defendants in support of summary judgment, and failed to proffer competent evidence directly refuting the evidence filed by Defendants. In fact, Plaintiff essentially concedes that the allegations set forth in the Amended Complaint relating to United Software are unfounded.

Plaintiff nevertheless resists summary judgment on the grounds that genuine issues of material fact allegedly exist relating to a new theory: Plaintiff now contends that Defendants may be violating ES&S' firmware rights by acquiring used ES&S voting machines. The Amended Complaint is silent as to any allegation relating to firmware, despite the fact that ES&S was well aware of RBM's use of second hand ES&S voting machines before commencing this action. In

fact, ES&S had aggressively, but unsuccessfully, campaigned against RBM's use of ES&S voting machines to supply parts.

Plaintiff's new theory, like the old one, is wholly unsupported by any evidence. In fact, Plaintiff contends that it must conduct additional discovery to unearth essential facts support this new theory in order to resist the instant motion.

It is patently clear that ES&S never had any factual basis for any of the claims asserted in the Amended Complaint. This case is ripe for summary judgment and it is well past time to put an end to this litigation. In fact, this case should never have been filed. For each of the reasons set forth below, and in Defendants' original Brief, Defendants are entitled to summary judgment as a matter of law.

## BACKGROUND

The baseless nature of this lawsuit and latest arguments advanced by Plaintiff in opposition to summary judgment, can be best understood by the background between the parties. There is nothing unusual about RBM's business. RBM provides maintenance and election support services to county governments utilize different makes of voting equipment, including those who utilize ES&S voting machines.[1] [Doc. #113-3, ¶ 6; #113-2, ¶ 4]. Just as independent automotive repair shops regularly compete with dealers for maintenance and service business, RBM competes with ES&S for customers who use ES&S voting machines. ES&S has long

---

[1] In its opening discussion in its Brief in Opposition purporting to describe "RBM and its business model", ES&S states that "RBM is comprised of former ES&S employees—like Hayek—who seek to steal business form ES&S by soliciting ES&S customers to use RBM for service and maintenance to ES&S voting machines the customer has purchased from ES&S." [Doc. #136, at 2]. In support of this attenuated statement, ES&S cites to a printout of RBM's website highlighting RBM's experience and service offerings. The statement is patently false, not just because of the hyperbolic accusation that RBM "steals" customers from ES&S, but to the extent it attempts to characterize RBM's business model as directed solely at ES&S. Furthermore, ES&S attempts to imply that all service offerings displayed on RBM's website are directed solely at customers utilizing ES&S equipment. [Doc. #137-6]. The statement ignores the unrebutted testimony submitted by RBM establishing that RBM provides service to customers utilizing several different brands of voting machines, ES&S being just one manufacturer. [Doc. #113-3, ¶ 6; #113-2, ¶ 4]. The website itself discloses that RBM services other manufacturers, including Unisyn Equipment. [Doc. #137-6 at 2].

understood RBM's business model and has long viewed RBM as a competitive threat. In fact, this lawsuit is just one of several tactics employed by ES&S to limit competition from RBM.

As early as January 6, 2010, ES&S announced internally that it would no longer supply replacement parts to customers who did not utilize ES&S for maintenance and support services. [Doc. #140-1]. The policy was targeted at RBM and other third party service providers by attempting to cut them off from replacement parts. As an ES&S manager wrote at the time: "[w]e should not allow customers to pick other vendors for maintenance support and then ask ES&S to provide parts for them." *Id.* [See also Doc. #137-9 (letter from ES&S to the Indiana Secretary of State explaining ES&S' no replacement parts policy)].

However, the no replacement parts policy implemented by ES&S failed to eliminate competition for service business as ES&S had hoped. Instead, RBM began purchasing used ES&S voting machines on the secondary market to harvest replacement parts. By using parts taken from used EAC certified voting machines as replacements, the maintenance service provided by RBM complies with state and federal certification requirements. ES&S itself has employed the same practice. ES&S routinely harvests salvageable component parts from returned voting machines. [Doc. #139-4, ¶¶ 3-20]. By employing this same practice, RBM was able to continue competing for maintenance and election support services business from ES&S customers. ES&S was well aware that RBM was cannibalizing parts from old machines for use as replacement parts by early 2011. [Doc. # 140-4, at ESS00551-552].

The fact that RBM continued to compete with ES&S for service business by using salvaged replacement parts became an increasing source of frustration for ES&S. *Id.* To push back, ES&S began a campaign directed at convincing customers and state and county governments that RBM's practice of using used replacement parts jeopardized state and federal

4

certification of the voting machines.  There was and is no merit to ES&S' claim that salvaged parts cannot be used as replacement parts without voiding certification, as exhibited by ES&S's own practices.  [Doc. #139-4, ¶¶ 3-20].  Additionally, ES&S routinely loaned used machines to county governments.  *Id*.

Nevertheless, in September of 2011, ES&S contacted election officials in Allegheny County, Pennsylvania, and represented that RBM did not have access to certified parts, and that Allegheny County would be jeopardizing its EAC and state certification by allowing RBM to work on their machines.  [Doc. #138-4].  ES&S also complained to Pennsylvania state election officials regarding RBM's practices and alleged threat to certification of equipment.  *Id*.  Centre County, Pennsylvania election officials were also warned by ES&S of the alleged threat to certification posed by RBM, and the fact that ES&S had reported RBM's activities to state elections officials.  [Doc. #113-5, 65:4-66:13].

On October 25, 2011, ES&S testified at a public hearing before the Summit County Ohio Board of Elections to protest a service and maintenance contract being awarded to RBM.  [Doc. #138-12].  ES&S warned Summit County that RBM would not be able to perform the maintenance contract because they would not be able to secure replacement parts.  [Doc. #138-12, 4:7-7:6].  The Summit County Board of Elections questioned why RBM would not be able to use parts salvaged from EAC certified ES&S voting machines.  [Doc. #138-12, 7:7-17].  In response, ES&S conceded that parts could be salvaged for use as replacement parts, provided that the state or federal government has not decertified the part:

> So long as the state or – I mean, if part A is still authorized to be used in the state or the federal government or the EAC doesn't say, "You can't no longer use the part," you can still use the part.

[Doc. #138-12, at 7:13-17].  Just as ES&S has presented no evidence to this Court establishing that any county, state or federal agency has ever deemed the use of salvaged parts improper or to effect the certification of a voting machine, no such evidence was presented by ES&S to the Summit County Election Board either.  Instead, ES&S raised only the possibility that RBM would not be able to obtain used machines to cannibalize, the County could run into certification issues by using salvaged replacement parts.  An ES&S representative testified at the Summit County hearing:

> So if [RBM] cannot obtain these through cannibalization or old equipment, we need to understand how are they – or ask the question, how are they conforming to the compliancy?  How are they [RBM] ensuring compliancy of that particular component obtained through cannibalization?

[Doc. #138-12, 16:22-17:2].  ES&S also argued, as they do before this Court, that RBM would not be able to acquire the requisite training from ES&S in order to be able to competently provide the services required by the agreement.  [Doc. #138-12, 21:10-22].  This assertion is again demonstrably untrue, as RBM has successfully maintained its existing relationships and continues to gain market share from ES&S through superior service.  [Doc. #139-2, ¶¶ 12-14]

ES&S' attempts to scare off RBM's customers did not work—at least the attempts that RBM knows about.[2]  ES&S lost its bid protest in Summit County and RBM was awarded the contract.  [Doc. #139-2, ¶¶ 12-14].  Contrary to the arguments made by ES&S, RBM has competently and satisfactorily performed all of its obligations and still has the maintenance and support services contract for Summit Count.  *Id.*  RBM also continues to do business with Centre

---

[2] ES&S has not fully complied with RBM's discovery requests in several respects, including disclosure of information sought by RBM regarding all contacts and communications that ES&S has had with customers or any federal, state, or county election officials regarding RBM's lack of access to replacement parts, use of salvaged parts, or capacity, necessary to determine the extent of lost business opportunities or damage to its reputation.

County, Pennsylvania and Allegheny County, Pennsylvania, despite ES&S' best efforts to convince RBM's customers that RBM would be unable to perform.

ES&S also failed to convince state election officials into believing that RBM's use of used parts would jeopardize certification did not work.  The State of Pennsylvania took no action against RBM.  [Doc. #139-2, ¶¶ 9-11].  Centre County was ever contacted by any state election officials regarding any problems or issues using RBM to provide maintenance services.  [Doc. #113-5, 65:4-66:13].  RBM has never been contacted by any federal, state or local election officials regarding any of its practices, including salvage or use of parts from used voting machines.  [Doc. #139-2, ¶¶ 9-11].  The reason RBM has never received any notice from any regulator concerning the use of salvaged parts is simple: replacing certified parts with parts taken from certified machines does not effect certification.[3]  [Doc. #139-2].  ES&S knows this and in fact, had no dramatic certification concerns when it borrowed voting machines from Canada and loaned them to Cuyahoga County. [Doc. #139-4]. If moving and modifying machines across international borders does not create any certification issues for ES&S, RBM's practices do not create any certification issues for RBM either.

Less than two months after ES&S lost its bid protest in Summit County, ES&S initiated this lawsuit.  [Doc. # 1].  However, this suit did not allege that RBM was improperly salvaging parts, illegally acquiring used ES&S voting machines, or illegally using firmware.  Instead, the Complaint and Amended Complaint alleged that RBM illegally copied, possessed and used ES&S' Unity Software to conduct a recount election in Centre County, Pennsylvania.  From the

---

[3] ES&S has provided absolutely no evidence or authority to the contrary, despite the fact that ES&S has been claiming that the use of salvaged replacement parts may effect certification since at least 2011.  If ES&S' assertion regarding used parts had any legitimacy, ES&S would have had no problem convincing state governments that a problem existed, and would have furnished this Court with ample evidence, including regulations or agency directives, supporting its position.

outset, it was obvious to RBM that there was no merit to the allegations of the Complaint, and that the suit was filed to harass RBM and chill legitimate competition.  Counsel for RBM served ES&S with a Rule 11 notice on February 10, 2012, demanding substantiation of the factual basis for the claims asserted in the Amended Complaint.  [Doc. #45-1; #45-2].  ES&S did not respond. [Doc. #45-1].  It is clear why ES&S did not respond.  By its own admission, ES&S still does not possess evidence sufficient to sustain the allegations of the Amended Complaint, and asserts that yet additional discovery is needed in order to rebut summary judgment. [Doc. #137-1, ¶¶ 20; 20(f)].

On February 4, 2014, Centre County election officials were deposed. [Doc. #113-5; #113-6].  In sworn testimony, the Centre County election officials directly refuted the specific allegations of the Amended Complaint.  [Stmt. Undisputed Facts, ¶¶ 1-6, Doc. #115, at 10].  The Centre County election officials testified that the recount was conducted by Centre County election officials using their own licensed copy of Unity Software.  *Id.*  The witnesses provided no substantiation of ES&S' claim that the recount was conducted by RBM using pirated Unity Software.  *Id.*

Undaunted, ES&S carried on.  However, in light of the devastating testimony of the Centre County officials, ES&S attempted to change course.  On March 17, 2014, more than two years after the lawsuit was commenced, ES&S served requests for inspection and supplemental discovery seeking information regarding all ES&S voting machines in RBM's possession.  [Doc. #67-1, ¶¶ 5-6].  The discovery served by ES&S on March 17, 2014, was the first time ES&S had raised any issue concerning used voting machines or firmware.  RBM resisted ES&S' belated attempt to expand discovery beyond the issues plead in the Amended Complaint.  [Doc. #71; #72-1; #137-1, ¶ 20(f)].

As will be discussed below, there is still no evidence to substantiate ES&S' claim that RBM ever misappropriated or copied its Unity Software, or that RBM misappropriated any other property belonging to ES&S. To the contrary, the only competent evidence before this Court directly contradicting the allegations of the Amended Complaint.

## DISCUSSION

Defendants presented the Court with affirmative evidence denying each of the material allegations of the Amended Complaint, and thereby shifted the burden to Plaintiff to demonstrate though competent evidence, the existence of a genuine issue of material fact. *Schaefer v. Yocum*, 860 F.Supp.2d 958, (D. Neb. 2012) (Once the moving party satisfies its initial burden, "the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial"). However, in order to withstand a motion for summary judgment, the nonmoving party must substantiate their allegations with "sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy." *Moody v. St. Charles County*, 23 F.3d 1410, 1412 (8th Cir.1994) (quoting *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir.1992)). "A mere scintilla of evidence is insufficient to avoid summary judgment." *Id.* Essentially the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52 (1986).

I.  **PLAINTIFF'S ATTEMPT TO RAISE NEW ISSUES RELATING TO FIRMWARE FAILS TO ESTABLISH THE EXISTENCE OF A GENUINE ISSUE OF MATERIAL FACT SUFFICIENT TO DEFEAT SUMMARY JUDGMENT.**

Unable to offer any evidence supporting any of the factual allegations actually pled in the Amended Complaint regarding Unity Software, Plaintiff attempts now to interject new issues never pled in an attempt to fabricate a genuine issue of material fact sufficient to avoid summary

judgment.  Plaintiff's new theory posits that RBM may be violating ES&S firmware rights by acquiring used ES&S voting machines.  Of course, Plaintiff again has no proof that RBM has engaged in any conduct violating any of ES&S' firmware rights.  Instead, ES&S asks the Court to allow ES&S to conduct more discovery to fish for evidence that might support its latest theory.  [Doc. 137-1, ¶20],  However, the eleventh hour firmware theories raised in Plaintiff's Brief in Opposition to Summary Judgment are insufficient to defeat summary judgment for several reasons.

First and foremost, the issues ES&S attempts to raise regarding firmware were not pled and fall well outside the allegations of the Amended Complaint.  [Doc. #24].  The specific facts alleged in the Amended Complaint all relate to Unity Software.  In fact, the words "Unity Software" appear thirty-three (33) times in the Amended Complaint and Unity Software forms the basis for each of the five claims for relief.  [Doc. #24].  As this Court noted previously in its ruling on Defendants' Motion to Dismiss, the only facts alleged relating to ES&S' copyright, confidential information or trade secrets claims relate to Unity Software. [Doc. #23].  On the other hand, the word "firmware" appears just once, in a background paragraph describing how Unity Software interacts with voting machines.  [Doc. #24, ¶ 11].  That firmware was not framed by the Amended Complaint or part of this dispute until March of 2014, is further underscored by the fact that Plaintiff failed to identify or disclose any facts or issues relating to firmware in its Initial Disclosures.  [Doc. #113-8].

In *Spence v. City of Philadelphia*, 147 Fed. Appx. 289, 292 (3rd Cir. 2005), the Third Circuit upheld a ruling by a district court rejecting a similar attempt to by a plaintiff to interject new issues and theories after defendant filed for summary judgment.  In affirming the district court, the Third Circuit noted that the plaintiff had not pled the issue in the complaint, and had

not moved to amend.  Instead, the plaintiff raised the issue only after summary judgment had been filed in an effort to defeat the motion.  The court determined that under such circumstances, it would be unfair to allow the plaintiff to raise new issues. *Id.*

The same result should apply here.  As discussed above, ES&S was well aware prior to filing this action that RBM was acquiring used ES&S voting machines, and was using the machines for purposes of salvaging parts, and/or supplying loaner machines to customers.  [Doc. 138-12, 16:22-18:13; 29:16-22].  Despite having this knowledge, ES&S did not allege any facts or assert any claims relating to firmware or the acquisition of used voting machines by RBM. Instead, Plaintiff chose to pursue a different tack, and alleged that RBM was misappropriating its Unity Software.  The issues Plaintiff now raises in the Brief in Opposition relating to firmware are separate and distinct from the factual allegations and claims relating to Unity Software, and are well outside the Amended Complaint.  That Plaintiff could have pled issues relating to its firmware or RBM's acquisition of voting machines in the Complaint, but did not, coupled with the fact that ES&S never sought leave of court to amend its pleadings, should bar Plaintiff from attempting to raise these issues at this late hour, simply to attempt to defeat summary judgment.

Secondly, ES&S has offered no evidence establishing that RBM has ever copied, used or otherwise misappropriated ES&S firmware.  ES&S relies entirely on unfounded allegations and its assertion that ES&S requires additional discovery to explore these issues. [See Part II below]. As noted above, speculation, conjecture or theoretical arguments fall far short of the evidence necessary to defeat summary judgment.  *Moody, supra,* 23 F.3d at 141.  Defendants expressly deny having ever supplied ES&S software or firmware to any customer. [Doc. #113-3, ¶¶ 22-23].  Defendants' uncontradicted testimony regarding firmware was corroborated by the Centre County election officials, who testified the county keeps its copy of ES&S firmware in a safe in

the election office. [Doc. #113-5, 65:4-66:13; Doc. #113-6, 26:24-27:14].  When ES&S firmware is needed to conduct maintenance on ES&S voting machines, Centre County election officials retrieve the PCMIA cards furnished by ES&S containing the firmware from the safe, which is then used to install the firmware.  *Id*.  Accordingly, there is absolutely no evidence from which to establish a genuine issue of material fact regarding the unfounded allegation that RBM has improperly used, copied or supplied ES&S firmware.

Finally, the evidence before this Court demonstrates the fallacy of ES&S' theory that by merely possessing ES&S voting machines, RBM has somehow violated ES&S' firmware rights. When RBM harvests parts from used ES&S machines, the machines are rendered inoperable. [Doc. #139-2].  No firmware is ever utilized.  *Id.*  In fact, the machines are not even turned on. *Id.*

Additionally, by its own admission, ES&S treats software differently than hardware. Customers can still contract with ES&S to receive firmware and firmware updates, even if the customer does not contract with ES&S for maintenance and support.  As ES&S explained during the Summit County public hearing:

> There's a difference between firmware and hardware. Firmware is ES&S proprietary software, you have to get that from us.  So long as you have a software maintenance and support agreement with ES&S, you will continue to receive updates, bug fixes, maintenance patches, that's separate than the hardware RBM is providing.

[Doc. #138-12, 22:3-10, at Page 22 of 32].  Thus, even if a customer like Summit County went with RBM for maintenance and support and would no longer have access to new replacement parts through ES&S, the customer would still have access to all firmware and firmware updates, so long as the customer contracted for such services.  Internal ES&S emails further demonstrate this point.  For example, an ES&S internal email dated September 29, 2011, authored by ES&S

employee Margaret Humbert addressing Allegheny County's cancellation of ES&S' hardware and maintenance services, states as follows:

> Yes he said I'm going with another company on the hardware the 650 machines I only want firmware.  What do I need to do to cancel and get a new invoice for firmware only?

[Doc. #138-4, at Page 2 of 3].

The foregoing discussion demonstrates the fallacy of ES&S' reasoning that by possessing ES&S voting machines containing ES&S firmware, that it necessarily follows that RBM is supplying ES&S firmware to customers.  Customers can obtain firmware directly from ES&S, which further corroborates RBM's unrebutted testimony that it does not supply any ES&S software or firmware to its customers.

For each of the foregoing reasons, Plaintiff's unpled and unsupported speculation and conjecture regarding firmware falls woefully short of establishing a genuine issue of material fact sufficient to overcome summary judgment.

## II.   PLAINTIFF'S REQUEST FOR RELIEF UNDER FED. R. CIV. P. 56(d) SHOULD BE DENIED.

Although not briefed, ES&S submitted a declaration of counsel pursuant to Fed. R. Civ. P. 56(e) asserting that ES&S is unable to present "facts essential to its opposition to Defendants' motion for summary judgment."  [Doc. #137-1, ¶ 20).  Specifically, Plaintiff asserts that pending and unresolved discovery disputes regarding its March 17, 2014 discovery and request to inspect voting machines purchased by RBM, have deprived ES&S of essential information needed to respond to the Motion.  *Id.*  That Plaintiff claims it needs to conduct additional discovery to establish essential facts supporting the basic allegations of its Amended Compliant after three years of litigation, is a stunning admission that this lawsuit is unfounded, which alone justifies summary judgment.

Rule 56(d) provides that "if a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."  The declaration contends that ES&S needs to conduct additional discovery: "ES&S cannot fully respond to Defendants motion for summary judgment until all facts related to RBM's conduct have been subject to discovery per the pending motions described herein and any discover [sic] that may further flow therefrom." [Doc. #137-1, ¶ 20(f)].  However, neither the declaration, nor the Brief in Opposition, asks the Court to delay consideration of the Motion for Summary Judgment, or to grant Plaintiff additional time to obtain affidavits, declarations or take additional discovery.  [Doc. #137-1, ¶ 20; Doc. #136].  Instead, the Brief in Opposition asks the Court to deny the Motion for Summary Judgment in its entirety.

As this Court noted in *Jacobs v. PT Holdings*, 2012 WL 705772 (D. Neb. 2012)(Case No. 8:11-cv-106), the purpose of Rule 56(d) "is to provide an additional safeguard against an improvident or premature grant of summary judgment."  *Id,* *2 (quoting 10B Charles Alan Wright et al., Federal Practice and Procedure: Civil 3d § 2740 (1998)).  The Court noted that "[g]enerally, the party seeking relief under Rule 56(d) must, by affidavit, describe (1) what facts are sought and how they are to be obtained; (2) how these facts are reasonably expected to raise a genuine issue of material fact; (3) what efforts the affiant has made to obtain them; and (4) why the affiant's efforts were unsuccessful." *Id.* (citation omitted).  The Court also noted that among the factors to consider under Rule 56(d) is whether the parties have had adequate time for discovery.  *Id.*  In *Jacobs,* the Court noted that the motion for partial summary judgment had been filed before the parties had conducted a Rule 26(f) conference and before any discovery had

been conducted.  The Court therefore denied the motion for partial summary judgment pursuant to Rule 56(d).

Here, Defendants' Motion for Summary Judgment was filed almost three years after this action was commenced, and more than three months after discovery had closed on matters relating to the claims asserted by ES&S in the Amended Complaint.  [Doc. #63].  Plaintiff cannot claim that the Motion for Summary Judgment is premature, or that Plaintiff has not had an adequate opportunity to conduct discovery.  Moreover, the issues raised in the Motion for Summary Judgment attack the lack of evidentiary support for the basic allegations of the Amended Complaint.  Plaintiff should have had evidentiary support before it filed suit.

Second, the declaration submitted by counsel for Plaintiff fails to make the necessary showing set forth in *Jacobs, supra*.  The declaration fails to state with any specificity what facts are sought and how they are to be obtained, or how such facts are reasonably expected to raise a genuine issue of material fact.  [Doc. #137-1, ¶ 20].  The declaration also fails to adequately disclose what efforts the affiant has made to obtain such facts, or why such efforts were unsuccessful.  *Id.*  The declaration does note that ES&S served discovery on RBM last March, seeking discovery and inspection of ES&S voting machines purchased by RBM, and asserts that ES&S has been thwarted in its attempts to obtain such information by RBM.  *Id.*  However, as noted in Part I above, issues relating to firmware or ES&S voting machines purchased by RBM were not plead and are therefore not relevant to the claims asserted in the Amended Complaint or the Motion for Summary Judgment.

Third, the declaration asserts that the inspection and supplemental discovery served last March "was served on RBM after ES&S learned in the Centre County deposition that RBM was providing ES&S-manufactured voting machines to customers."  [Doc. #137-1, ¶ 20(c)].  This

statement is patently false.  ES&S has long known that RBM acquires voting machines and has supplied voting machines to customers.  In fact, ES&S expressly alleges in this case that RBM provided an ES&S manufactured Model 650 voting machine to its customer in Centre County, Pennsylvania, for use in a recount election conducted earlier in 2011. [Doc. #1, ¶ 17]. Furthermore, several representatives of ES&S were present when RBM testified at the public hearing before the Summit County Board of Elections that RBM would make temporary replacement machines available for use by Summit County in the event it was unable to obtain a replacement part for any reason.  [Doc. #138-12, ¶ 29:12-22].  The statement was made by RBM on the record and in the presence of the several ES&S representatives. Accordingly, the statement that ES&S did not learn that RBM had supplied machines to customers prior to the deposition of the Centre County officials is absolutely untrue.

Additionally, the fact that ES&S did not attempt to conduct any discovery regarding firmware or RBM's possession or use of voting machines prior to March of 2014, despite having knowledge of RBM's use of voting machines prior to filing suit, renders ES&S eleventh hour plea that such information is essential to its unpled claims hollow.

For each of the foregoing reasons, Plaintiff's request that the Court deny the Motion for Summary Judgment pursuant to Rule 56(d) should be categorically denied.

## III. DEFENDANTS' OBJECTIONS TO INADMISSIBLE EVIDENCE OFFERED BY PLAINTIFF IN OPPOSITION TO SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56(c)(2).

Pursuant to Fed. R. P. 56(c)(2), Defendants object to several of the declarations submitted by Plaintiff in opposition to Defendants' Motion for Summary Judgment on the grounds that such declarations, in whole or part, do not contain admissible evidence.  In order to overcome summary judgment, the nonmovant must adduce sufficiently probative evidence establishing a genuine issue of material fact.  Additionally, the evidence adduced by the nonmovant must also

be competent. *Schaefer, supra.* "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that t affiant or declarant is competent to testify on the matters stated." *Schaefer,* 860 F.Supp.2d at 964-65. "Inadmissible hearsay evidence alone may not defeat a summary judgment motion." *Id.,* 860 F.Supp.2d at 965 (*citing Firemen's Fund Ins. Co. v. Thien,* 8 F.3d 644 (8th Cir. 2001).

　　1.　Declaration of Steve Bolton. [Doc. #137-2]. RBM objects to Paragraph 5 of Mr. Bolton's Declaration in its entirety on the grounds that it lacks foundation, contains inadmissible hearsay, and is not competent evidence to establish the existence or scope of any alleged copyright registration owned by ES&S for United Software. [Doc. #137-2, ¶ 5]. Mr. Bolton does not attest to having any personal knowledge of, or involvement with, any alleged registration, or having any personal knowledge of the contents or scope of any such registration. *Id.* Mr. Bolton's declaration does not attach or reference the existence of a Copyright Registration Certificate, or explain why ES&S is unable to provide a Copyright Registration Certificate. *Id.* Instead, Paragraph 5 of Mr. Bolton's declaration appears to be derived entirely from his review of pages printed from the United States Copyright Office on August 13, 2012, which were not disclosed to RBM until November 12, 2014. [Doc. #139-1, ¶ 3; #139-8]. RBM further notes that that a plain reading of the document descriptions obtained from the website of the United States Copyright office, indicate that the three documents are not copyright registrations, but are security interests filed by various financial institutions. [Doc. #139-1; #139-5; #139-6; #139-7; #129-8]. RBM asserts that whether and to what a copyright registration exists for Unity Software is solely the province of the Copyright Office, and that Mr. Bolton is

not competent to provide such testimony, and that any testimony contained in Paragraph 5 is based on hearsay.  Paragraph 5 should therefore be stricken.

2.      <u>Declaration of Al Moraczewski</u>.  [Doc. #137-4].  RBM objects to Paragraphs 6 & 7 of Mr. Moraczewski's Declaration on the grounds that said paragraphs lack foundation, contain inadmissible hearsay, and is not competent evidence.  [Doc. #137-4, ¶¶ 6-8].   Mr. Moraczewski claims to have personal knowledge of all facts set forth in his Declaration.  [Doc. #137-4, ¶ 2]. However, Mr. Moraczewski does not specifically assert that he has any personal knowledge of the specific facts alleged in Paragraphs 6 & 7 of his Declaration.  Specifically, in Paragraph 6, Mr. Moraczewski does not testify that he personally provided materials to Mr. Hayek, or that he otherwise had personal, first hand knowledge of what materials were furnished to him. Similarly, Paragraph 7 fails to establish that Mr. Morazcewski had personal knowledge regarding what property Mr. Hayek returned, or allegedly failed to return upon his separation.  Finally, Paragraph 8 fails to establish that Mr. Morazcewski personally attempted to contact Mr. Hayek. Instead, Mr. Morazewski's Declaration states that "Hayek would not return phone calls from ES&S" without establishing how he came to know such information.   Contrasted with Mr. Morazewski's testimony is the sworn testimony of Gerald Hayek, who attests that Gary Eurek was his immediate supervisor, not Morazewski. [Doc. #139-4].   Hayek also testified that he personally returned all property and materials requested by ES&S to Eurek.  *Id.*   Hayek's testimony demonstrates that Mr. Morazewski's declaration lacks sufficient foundation and contains inadmissible hearsay.  Finally, Hayek's testimony establishes that technicians were no longer carrying firmware at the time of his separation due to a change in policy at ES&S approximately a year before he left, a fact conveniently omitted from Mr. Morazewski's

declaration.  [Doc. #139-4].  Accordingly, Hayek had no firmware in his possession to return at the time he left ES&S.  Paragraphs 6-8 should therefore be stricken.

   3. <u>Declaration of Todd Urosevich</u>.  [Doc. #137-5].  RBM objects to Paragraph 5 of Mr. Urosevich's Declaration on the grounds that said paragraph contains inadmissible hearsay. [Doc. #137-5, ¶ 5].  Mr. Urosevich's testimony contains inadmissible hearsay on its face, stating that "ES&S has received reports that RBM has made statements that RBM is a certified DS200 printer."  *Id.*  An email authored by Mr. Urosevich on January 27, 2011, purports to document a report Mr. Urosevich allegedly received from a third party regarding "RBM's claim that they are a certified DS200 Printer." [Doc. #140-3, ESSvRBM00562].  Mr. Urosevich's testimony regarding statements from third parties constitutes inadmissible hearsay.  Furthermore, the underlying email suggests that the person who allegedly relayed the report to Mr. Urosevich, was simply relaying information received from other third parties.  Accordingly, Paragraph 5 also contains hearsay within hearsay, at least in part.  *Id.*  ES&S has been aware of the report received by Mr. Urosevich since January of 2011, yet has been unable to obtain any authentication or proof to substantiate the substance of the allegation through competent declarations or deposition testimony in the ensuing four years.  Paragraph 5 of Mr. Urosevich's Declaration should be stricken.

   4. <u>Declaration of Steve Pearson</u>.  [Doc. #137-10].  RBM objects to Paragraph 6 of Mr. Pearson's Declaration on the grounds that said paragraph lacks foundation, is based upon inadmissible hearsay, and contains legal conclusions.  [Doc. #137-10, ¶ 6].  Mr. Pearson's Declaration fails to establish sufficient foundation for his sweeping conclusions regarding the requirements of federal law and each of the states, including his statement that that "any change

to hardware, software or firmware must be approved before it is implemented." *Id.* Accordingly,

Paragraph 6 is based on hearsay, lacks foundation, and should be stricken.

## IV. PLAINTIFF FAILED TO OFFER ANY COMPETENT EVIDENCE ESTABLISHING THE EXISTENCE OF ANY GENUINE ISSUE OF MATERIAL FACT WITH RESPECT TO ANY STATEMENT OF UNDISPUTED FACT ASSERTED BY DEFENDANTS IN SUPPORT OF SUMMARY JUDGMENT.

Plaintiff failed to proffer competent evidence rebutting any of the Statements of

Undisputed Fact asserted by Defendants in the original Brief. Nevertheless, Plaintiff denied

nearly every Statement of Undisputed Fact, except those establishing dates that discovery

materials were served. Plaintiff denied the rest, despite the lack of evidence to support such

denials, by simply ignoring the actual facts alleged, or alleging additional, irrelevant facts to

create a false impression of genuinely disputed facts. However, a review of the evidence

supporting the assertions of fact, in light of the paucity of evidence offered by Plaintiff to rebut

such evidence, demonstrates that Plaintiff's non-denial denials are unfounded, and should be

deemed admitted pursuant to Rule 56(e). Defendants' Statements of Undisputed Facts are set

forth below in their entirety, along with a discussion of Plaintiff's response.

1.      On June 1, 2011, Defendants assisted Centre County, Pennsylvania election

officials to conduct an election recount using a M650 Voting Machine that RBM borrowed from

another county. [Doc. #113-2, , ¶¶ 37-45; #113-3, ¶¶ 32-38; #113-5, 22:5-23:7; 24:8-26:1; #113-

6, 15:15-22:13; #113-4, ¶¶1-9].

DENIED. Plaintiff claims that Defendants "did more than just 'assist' Centre County."

The distinction is immaterial. Defendants stand on the evidence cited in support of this assertion

of fact, and further assert that none of the evidence cited by Plaintiff contradicts this assertion.

Defendants assert that Plaintiff's non-denial denial constitutes a failure to adequately address

Defendants' assertion of fact and should be deemed undisputed pursuant to Fed. R. Civ. P. 56(e).

2.     The recount was conducted by Centre County election officials using Centre County's licensed copy of Unity Software installed on a computer owned and operated by Centre County.   [Doc. #113-2, , ¶¶ 37-45; #113-3, ¶¶ 32-38; #113-5, 22:5-23:7; 24:8-26:1; #113-6, 18:1-22:13; #113-4, ¶¶1-9].

DENIED.  Plaintiff ignores the facts asserted and instead asserts that Hayek was the sole operator of the M650 during the recount, and asserts that RBM furnished the M650 to Centre County without ES&S' permission.   The distinction is immaterial.   Defendants stand on the evidence it cited and assert that none of the evidence cited by Plaintiff contradicts this assertion. Jody Neidig was unequivocal in her testimony that all operation of Unity and all coding of the election was done by her personally.   [Doc. #113-6, 86:13-87:13].   Defendants assert that Plaintiff's non-denial denial constitutes a failure to adequately address Defendants' assertion of fact and should be deemed undisputed pursuant to Fed. R. Civ. P. 56(e).

3.     Defendants did not supply the Unity Software used to conduct the Centre County recount election conducted on June 1, 2011.  [Doc. #113-2, ¶¶ 41; #113-3, ¶ 38; #113-5, 22:5-23:7, 24:8-26:1); #113-6, 15:15-22:13].

ADMITTED.

4.     Defendants did not use Unity Software to conduct the Centre County recount election conducted on June 1, 2011.   [Doc. #113-2, ¶¶ 42-44; #113-5, 22:5-23:7, 24:8-26:1); #113-6, 15:15-22:13].

DENIED.  Plaintiff ignores the facts asserted and instead, erroneously asserts that Centre County was not authorized to use its licensed copy of Unity Software "to program the M650." Plaintiff further asserts that the county that loaned the M650 did not have permission to do so. These assertions are both irrelevant and false.   Defendants stand on the evidence it cited and

assert that none of the evidence cited by Plaintiff contradicts this assertion, and Jody Neidig's testimony.   [Doc. #113-6, 86:13-87:13].   Defendants assert that Plaintiff's non-denial denial constitutes a failure to adequately address Defendants' assertion of fact and should be deemed undisputed pursuant to Fed. R. Civ. P. 56(e).

5.      Centre County election officials coded the definitions necessary for the recount using its licensed version of Unity Software, and at all times operated Unity during the recount. [Doc. #113-2, , ¶¶ 42-44; #113- 5, 22:5-23:7, 24:8-26:1); #113-6, 18:4-22:6-9]

DENIED.  Plaintiff ignores the facts asserted and instead, asserts that Hayek supplied and operated the M650 machine.  Plaintiff's assertion is irrelevant and nonresponsive. Defendants stand on the evidence it cited and assert that none of the evidence cited by Plaintiff contradicts this assertion. Defendants assert that Plaintiff's non-denial denial constitutes a failure to adequately address Defendants' assertion of fact and should be deemed undisputed pursuant to Fed. R. Civ. P. 56(e).

6.      Defendants located, transported and operated the M650 during the recount.  When the recount was completed, Defendants returned the M650 to its owner.  [Doc. #113-2, ¶¶ 37-45; #113-3, ¶¶ 32-38; #113-5, 22:5-23:7, 24:8-26:1; #113-6, 15:15-22:13; #113-4, ¶¶1-9].

ADMITTED.

7.      Defendants have never copied Unity Software.  [Index, Ex. 2 (Hayek), ¶ 17; Ex. 3 (Mullen), ¶ 20].

DENIED.  Plaintiff ignores the facts asserted and instead, erroneously asserts that Hayek "solely utilized the coding from Unity to program the M650".  Plaintiff cites no evidence demonstrating that Defendants have ever copied Unity Software, as Plaintiff alleged in the Amended Complaint.  Defendants stand on the evidence it cited in support of this assertion, in

addition to testimony of Jerry Hayek establishing that Unity Software resides as an application solely on the user's computer and is never loaded onto voting machines, [Doc. #113-2, ¶ 14]; and Jody Neidig's testimony that she conducted all of the election coding using Unity, and that Hayek's role was to physically carry the data downloaded by Neidig onto a zip drive, and plug it into the machine.  [Doc. #113-6, 86:13-87:13]. Plaintiff's non-denial denial constitutes a failure to adequately address Defendants' assertion of fact and should be deemed undisputed pursuant to Fed. R. Civ. P. 56(e).

8.     Defendants do not posses, and have never possessed, a copy of Unity Software. [Doc. #113-2, ¶ 18; #113- 3, ¶ 19; see #113-5, 36:19-37:1].

UNKNOWN AT THIS TIME.  ES&S admits that it has no evidence that ES&S ever possessed Unity Software, as alleged in the Amended Complaint, despite three years of litigation. Discovery has long since closed and this assertion of fact should be deemed admitted. ES&S's statement that it has moved to compel inspection of ES&S voting machines acquired by RBM is erroneous and irrelevant.  Unity Software resides as an application solely on the user's computer and is never loaded onto voting machines, [Doc. #113-2, ¶ 14].  Accordingly, an inspection of ES&S voting machines would shed no light on whether Defendants ever possessed Unity.  This assertion of fact should be deemed admitted.

9.     Defendants have never solicited customers or prospective customers, in Pennsylvania or elsewhere, by using copies of Unity Software.  [Doc. #113-2, ¶ 20; #113-3, ¶ 21; #113-5, 18:4-19:6, 22:6, 36:19-37:1].

DENIED.  Plaintiff ignores the facts asserted and instead, asserts that RBM competes for business from ES&S customers.  Plaintiff offered no evidence establishing that Defendants have ever used Unity Software to solicit customers or prospective customers, as alleged in the

23

Amended Compliant, or otherwise contradicting any of the evidence cited by Defendants in support of this assertion of fact. Plaintiff's non-denial denial constitutes a failure to adequately address Defendants' assertion of fact and should be deemed undisputed.

10.     Defendant Hayek did not copy, remove, retain or use any property or materials belonging to ES&S, including any "trade secrets" or "Confidential Information," following his separation from ES&S.  [Doc. #113-2, ¶¶ 22-27].

DENIED.  Plaintiff alleges Hayek failed to return a specialized tool kit containing ES&S firmware.  As addressed above, the testimony proffered by Plaintiff to support its denial in incompetent, lacks foundation, and is based on inadmissible hearsay.  Plaintiff has proffered no first hand testimony establishing that Plaintiff failed to return any property.  Furthermore, the testimony of Hayek establishes that he did not have any firmware in his possession to return at the time he left ES&S.  [Doc. #139-4].  Finally, as will be discussed below, the evidence proffered by Plaintiff in opposition to summary judgment is woefully inadequate to establish a genuine issue of material fact to support this claim.

11.     Defendant Hayek never disclosed any "trade secrets" or "Confidential Information" acquired during Hayek's employment with ES&S to RBM or any third party. [Doc. #113- 2; ¶ 24; #113-3, ¶¶ 24-25].

DENIED.  Plaintiff denied this assertion of fact for the same reasons asserted by Plaintiff in response to paragraph 10.  However, Plaintiff identified no evidence in its response to paragraph 10 supporting the assertion that Hayek ever disclosed any information to any third party. Plaintiff's non-denial denial constitutes a failure to adequately address Defendants' assertion of fact and should be deemed undisputed.

12.   Defendants have never possessed, copied or used any "trade secrets" or "Confidential Information" that Defendant Hayek acquired during his employment with ES&S. [Doc. #113- 2; ¶ 24; #113-3, ¶¶ 27-28].

DENIED.  Plaintiff denied this assertion of fact for the same reasons asserted by Plaintiff in response to paragraph 10.   However, Plaintiff identified no evidence in its response to paragraph 10 establishing that Hayek furnished any information to RBM.   Plaintiff further alleges that RBM has acquired and possesses "spare" voting machines.  However, as Plaintiff's response concedes, such machines were not acquired from ES&S by Hayek during his employment, but were acquired by RBM from third party sources after Hayek left ES&S. Plaintiff's non-denial denial constitutes a failure to adequately address Defendants' assertion of fact and should be deemed undisputed.

13.   Defendants have never represented that RBM is in any way affiliated with ES&S. [Doc. #113- 2; ¶¶ 32-36; #113-3, ¶¶ 29-31].

DENIED.   Plaintiff again ignores the facts asserted, and instead asserts that RBM represents its ability to service and maintain ES&S voting machines.  RBM does service ES&S machines on a daily basis, has been doing so successfully for years, and freely represents its track record and success.  Plaintiff proffered no evidence establishing that RBM ever represented that RBM is in any way affiliated with ES&S.  Plaintiff's non-denial denial constitutes a failure to adequately address Defendants' assertion of fact and should be deemed undisputed.

14.   Defendants have never represented that any of the services that RBM provides are sanctioned, approved, or certified by ES&S.  [Doc. #113- 2; ¶¶ 32-36; #113-3, ¶¶ 29-31].

DENIED.   Plaintiff denied the facts asserted in paragraph 14 for the same reasons asserted in paragraph 13.  However, Plaintiff identified no evidence in its response to paragraph

13 establishing that RBM ever represented that any services RBM provides are sanctioned, approved, or certified by ES&S. Plaintiff's non-denial denial constitutes a failure to adequately address Defendants' assertion of fact and should be deemed undisputed.

15.     A search of the online public catalog maintained by the United States Copyright Office revealed no record of any copyright registration for "Unity Election Management System Software".  [Doc. #113-1, ¶¶ 4-5; #113-7].

DENIED.   Plaintiff attempts to assert that it has a valid U.S. copyright registration through incompetent evidence and inadmissible hearsay testimony. However, as will be discussed herein, the evidence proffered by Plaintiff is insufficient to establish proof of a valid copyright registration sufficient to establish that Plaintiff has standing to bring an infringement claim.

16.     Written discovery concluded on issues relating to the Amended Complaint on July 18, 2014.  [Doc. #63]

DENIED.   The Final Amended Progression Order, which has not been amended as to issues relating to the Amended Complaint, speaks for itself.  [Doc. #63].  Plaintiff's non-denial denial constitutes a failure to adequately address Defendants' assertion of fact and should be deemed undisputed.

17.     Plaintiff served its Initial Disclosures on August 31, 2012.  ADMITTED.

18.     Plaintiff served its Supplemental Answers to Hayek's Interrogatories on September 22, 2014.  ADMITTED.

19.     Plaintiff served its Supplemental Responses to Hayek's Requests for Production on September 22, 2014.  ADMITTED.

20.     Plaintiff served its Responses to RBM's First Set of Requests for Production on August 7, 2014.  ADMITTED.

## V.     PLAINTIFF FAILED TO REBUT DEFENDANTS' ASSERTION THAT DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON EACH OF THE FIVE CLAIMS ASSERTED IN THE AMENDED COMPLAINT.

### A.     <u>Copyright Infringement.</u>

*(1)  Plaintiff Failed To Establish That It Has Standing To Sue.*  In their original Brief, Defendants first noted that Plaintiff had failed to produce a Certificate of Copyright Registration or other competent proof establishing that Plaintiff registered its copyright claim with the United States Copyright Office.  In response, Plaintiff erroneously asserts that Defendants' argument fails on this point because Plaintiff has the burden to establish that it is entitled to judgment as a matter of law.  Plaintiff is wrong.

First, registration of a copyright is a condition precedent to being able to prosecute a claim for infringement under the Copyright Act, 17 U.S.C.A. § 411(a).  *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157 (2010)("Section 411(a)'s registration requirement is a precondition to filing a copyright claim").  Failure to comply with the registration requirement precludes an action for infringement.  *Business Audio Plus, L.L.C. v. Commerce Bank, NA*, 2011 WL 250670, at *2 (E.D. Mo. 2011)(dismissing copyright claim due to plaintiff's failure to register copyright, stating "[p]laintiff fails to meet § 411(a)'s statutory prerequisite, and thus cannot maintain its infringement claim"); *Mayo Clinic v. Elkin*, 2010 WL 5421322, at *5 (D. Minn. 2010)(granting summary judgment where plaintiff had not registered copyright); Abrams, THE LAW OF COPYRIGHT, § 10:19 (2014).  Thus, it is not Defendants burden to prove that Plaintiff has not registered its copyright.  It is Plaintiff's burden to prove that it satisfied the prerequisites of 17 U.S.C.A. § 411(a), and has standing to assert a copyright infringement claim in this action. Plaintiff has failed to meet its burden.

Secondly, because registration is a precondition to being able to bring an infringement claim, Plaintiff had an affirmative obligation to disclose information proving that Plaintiff had properly registered its copyright claim in its Initial Disclosures, since such evidence would be needed to support its copyright claim.  Plaintiff failed to provide proof that it had registered a copyright claim for Unity Software in its initial disclosures.

Third, ES&S failed to provide proof of copyright registration for Unity in response to discovery requests made by Defendants.  In fact, ES&S failed to timely provide any documents or evidence relating to any purported copyright registration until November 12, 2014, four months *after* discovery closed.  Failure to timely provide proof of copyright registration is grounds for dismissing an infringement claim. In *Florentine Art Studio, Inc. v. Vedet Corporation*, 891 F.Supp. 532, 535, (C.D. Ca. 1995), a district court dismissed an infringement claim where plaintiff failed to produce the registration certificate until after close of discovery on the eve of trial.

Fourth, Plaintiff still has not produced a Certificate of Copyright Registration, or other competent evidence from the United States Copyright Office, establishing the existence of a valid copyright registration for Unity Software.  Plaintiffs who claim copyright infringement nearly always proceed by producing a Certificate of Copyright Registration.  As one leading treatise explains, a Certificate of Copyright Registration serves two purposes.  It not only establishes that a plaintiff has standing to proceed under the Copyright Act, but also establishes prima facie evidence of the existence of a valid copyright, if the Certificate is issued within five years of first publication:

> If access to the courts to enforce a copyright is the stick that impels copyright registration, there are also some carrots.  First, in any litigation where registration is made before or within five years of first publication, the certificate of registration "shall constitute prima facie evidence of the validity of the copyright

> and of the facts stated in the certificate.  If the registration is made beyond that period, the "evidentiary weight to be accord the certificate of registration . . . is within the discretion of the court."  This evidentiary presumption can be a useful procedural tool when the copyright is old, knowledgeable persons are missing or deceased and the documents are lost or no longer exist.

Abrams, THE LAW OF COPYRIGHT, § 10:19 (2014).

In light of the foregoing, it is inconceivable that Plaintiff has not produced a Certificate of Copyright Registration three years into this litigation.  Even more so considering how simple it is for the owner of a valid copyright registration to obtain a copy of the Certificate of Copyright Registration by simply contacting the United States Copyright Office. [Doc. #139-3].  Unless of course, ES&S never obtained a copyright registration for Unity Software.

Fifth, the evidence of Plaintiff's purported registration belatedly proffered by Plaintiff in response to summary judgment, falls far short of proving copyright registration.  Plaintiff proffers the Declaration of Steve Bolton, an ES&S employee who testified as follows with respect to ES&S alleged registration of Unity:

> ES&S's Unity software was copyrighted by ES&S.  At the time of registration, it was known as "election administration and control model system design" and the applicable copyright numbers are V3407D789 (registered in 1997), V3514D750 (registered in 2004), and V3522D317 (registered in 2005).  ES&S did not register the trademark for "Unity" until 2005.

[Doc. #137-2, ¶ 5].  Mr. Bolton's testimony is curious for several reasons.  First, the initial sentence stating that "Unity software was copyrighted by ES&S" is completely irrelevant.  Registration is not required for copyright protection under the Copyright Act.  An original work can still be deemed to be copyrighted in the absence of a copyright registration.  However, a copyright owner must have a copyright registration in order to sue for infringement. Next, Mr. Bolton references three "applicable copyright numbers."  However, the numbers Mr. Bolton references are not copyright registration numbers, but rather, document numbers assigned by the

United States Copyright Office.  [Doc. #139-1; #139-5; #139-6; #139-7].  Furthermore, a review of the document descriptions relating to each of those document numbers cited by Mr. Bolton reveal that they are not copyright registrations, but documents filed by financial institutions asserting security interests in ES&S copyright interests. *Id.*

In any event, Mr. Bolton's declaration testimony is insufficient to establish proof of copyright registration necessary for this claim to proceed.  Mr. Bolton does not state that he has first hand knowledge of the registration, or the scope of the copyright purportedly registered. Instead, Mr. Bolton relies on inadmissible hearsay relating to bank security interests, which is in itself is insufficient to prove the registration of a copyright.  Mr. Bolton's assertions, and the website printouts he relied upon, constitute inadmissible hearsay.  *See Florentine Art Studio, supra,* 891 F.Supp. at 535 (holding that documents relating to a copyright assignment and license referencing the existence of an underlying copyright registration were hearsay and inadmissible for purposes of proving the existence of a valid copyright registration).

Mr. Bolton's testimony also fails to establish authorship, how ES&S acquired ownership, the scope of the purported copyright, date of first publication, and when the copyright registration was purportedly first obtained. In the absence of a Certificate of Copyright Registration, Plaintiff must prove each of these elements.  Abrams, THE LAW OF COPYRIGHT, § 10:19 (2014).  Plaintiff has failed to prove any of these elements, and accordingly, has failed to demonstrate that it complied with the prerequisites of the Copyright Act to proceed on a claim for infringement.  Plaintiff's copyright claim for Unity Software should therefore be dismissed.

Finally, it should be noted that ES&S has not proffered any evidence establishing that its firmware is copyrighted or the subject of a copyright registration.  Accordingly, ES&S has no cause of action for infringement of any firmware.

*(2) Plaintiff Failed To Proffer Evidence Establishing A Genuine Issue Of Fact.*  Plaintiff produced no evidence establishing that Defendants unlawfully copied Unity Software.  Instead, Plaintiff lamely posits that because RBM supplied and operated the M650 machine, and because Hayek assisted with the transfer and uploads of data files created by Center County onto the M650, that RBM somehow violated ES&S' copyright.  Plaintiff's argument is wholly without factual support or legal merit.  First, there is no evidence that RBM provided any coding of the election.  To the contrary, Jody Neidig's uncontradicted testimony establishes that she alone coded the election using Centre County's copy of Unity.  [Doc. #113-6, 86:13-87:13].  Secondly, Neidig testified that after she coded the election on the Unity Software application, she downloaded the election definition data onto a removable zip drive, which she gave to Hayek.  [Doc. #113-6, 17:1-18:17; 22:10-15].  Hayek then physically inserted the disk into the M650 and uploaded the data.  *Id.*  After the recount was run, the process was reversed.  Hayek downloaded the recount data on the disk.  He then removed the disk and physically gave it back to Neidig.  Neidig then uploaded the data into Unity to tabulate the results.  *Id.*

The evidence establishes that Hayek acted simply as a conduit between Ms. Neidig and the M650 to facilitate the transfer of data by physically transferring and inserting the disk, and by initiating the data uploads and downloads.  The result would have been the same had Neidig physically shuttled the zip disk back and forth.  There is absolutely no evidence establishing that Hayek copied, transferred or uploaded copies of Unity Software or firmware.  To the contrary, Defendants affirmatively denying have ever copied Unity Software or firmware.  Nor does Unity Software ever reside on a voting machine.

Plaintiff cites no authority for the proposition that merely handling data disks, or merely uploading or downloading data utilized by copyrighted software, creates an actionable claim for

31

infringement.   ES&S' constant refrain of "unauthorized use" does not   establish copyright infringement.   ES&S must prove that RBM actually copied or distributed its copyrighted software.  *Papa John's Intern., Inc. v. Rezko*, 446 F.Supp.2d 801, 810 (N.D. Ill. 2006).  Having failed to proffer any competent evidence that RBM violated any protectable copyright interest, Plaintiff's copyright claim must fail and Defendants are entitled to judgment as a matter of law.

**B.**     **Trade Secrets.**

Plaintiff's Second Claim for Relief alleges that Defendants have misappropriated trade secrets belonging to ES&S.  As this Court determined, the only "trade secret" pled by Plaintiff was Unity Software.  [Doc. #23, at 6].  The record is devoid of any evidence that Defendants wrongfully misappropriated Unity Software from ES&S.

Conceding that it has no evidence to support the allegations of the Amended Complaint, Plaintiff  instead claims that firmware is a trade secret.  Plaintiff claims there is a question of fact as to whether Hayek misappropriated trade secrets by failing to return tools or firmware. Plaintiff also argues that by allegedly using ESS' M650 without authorization, Defendants misappropriated ES&S' trade secrets.  Each of these claims is again without legal or factual support.

First, as noted herein, Plaintiff did not plead any facts or claims relating to firmware in the Amended Complaint.  Plaintiff should not be allowed change horses and raise new theories at this late stage in an effort to fabricate an issue of fact.

Second, Hayek testified that he did not take any firmware or tools with him when he left. [Doc. #113-2].  He further testified that he did not have any firmware in his possession when he terminated his employment due to ES&S's change in policy relating to firmware.  [Doc. #139-4]. In fact, Hayek had not carried firmware for nearly a year prior to his departure.  *Id.*  Accordingly,

his testimony does not conflict, and can be harmonized with, evidence proffered by ES&S. Based on the paucity of evidence presented by Plaintiff, there is insufficient evidence for a jury to reasonably find that Hayek retained and used "trade secrets" belonging to ES&S.

Third, there is no evidence whatsoever to establish that Hayek ever disclosed or used any firmware, tools or property, that ES&S' alleges that he kept. Plaintiff must show that the Defendants disclosed or used its trades secrets in order to establish a claim for misappropriation. In the absence of any such evidence, a jury cannot reasonably find in favor of Plaintiff.

Finally, Plaintiff has proffered no evidence supporting its allegation that Defendants used any firmware belonging to ES&S. Nor has Plaintiff identified any authority standing for the proposition that the mere use of machine borrowed from a customer, could give rise to a misappropriation claim  under the Nebraska Trade Secrets Act as a matter of law.

For each of these reasons, Defendants are entitled to summary judgment on Plaintiff's Second Claim for Relief.

## C.     <u>Common Law Conversion.</u>

Plaintiff's Third Claim for Relief specifically alleged that Defendants wrongfully converted ES&S' property interests in its Unity Software.  Plaintiff has again produced no evidence to support the claim pled in the Amended Complaint, and again concedes that it has no evidence establishing that Defendants wrongfully converted its Unity Software.  Instead, Plaintiff again argues that genuine issues of fact exist regarding whether Plaintiff has wrongfully violated its property interests in its firmware.  Plaintiffs arguments are again without merit.

Plaintiff argues that Defendants confuse the difference between Plaintiff's copyright claim and Plaintiff's conversion claim—the latter claim encompassing a broader array of property interests.  Defendants are not "blurring" the distinction between these claims; it is

Plaintiff that is attempting to blur the distinction between facts and issues actually plead in the Amended Complaint, from those raised in opposition to summary judgment.

Furthermore, Plaintiff has again proffered no evidentiary support for its argument that ES&S has used ES&S firmware in a manner inconsistent with ES&S' property interests.  RBM affirmatively denies that it uses ES&S firmware.  It has submitted unrebutted testimony establishing that it does not supply software or firmware to customers.  [Doc. #113-2; #113-3].  RBM has also submitted testimony establishing that it does not activate voting machines or use firmware when harvesting parts.  [Doc. #139-2].  RBM's actions in harvesting parts from used machines in no way deprives ES&S of possession or use of firmware.  *Mapledge Corp. v. Coker*, 167 Neb. 420, 93 N.W.2d 369 (1958).  Similarly, because RBM does not supply firmware to customers, it cannot have deprived ES&S of its property rights.

There is no genuine issue of material fact and Plaintiff's Third Claim for Relief should be dismissed.

**D.     Breach of Contract.**

Plaintiff's Fourth Claim for Relief fails for the same reasons articulated above regarding Plaintiff's trade secrets claim.  Hayek denies that he retained any materials he was obligated to return and denies that he retained any firmware.  For the reasons set forth herein, the paucity of evidence adduced by Plaintiff is insufficient for a reasonable jury to conclude that that Hayek failed to return any materials.  Plaintiff has prosecuted this case for three years.  The only evidence they have to support the accusation that Hayek did not return materials, is a hearsay declaration from an ES&S manager who was not Hayek's supervisor, and who was not present when Hayek returned his equipment.  In order to rebut summary judgment, Plaintiff must establish issues of fact through competent evidence, rather than hearsay evidence and unfounded

declarations. Furthermore, there is no evidence that Hayek used any such materials, or that ES&S suffered any damage or injury. There is simply no genuine issue of fact regarding Plaintiff's Fouth Claim for Relief and Defendants are entitled to judgment as a matter of law.

E.     **Deceptive Trade Practices.**

Plaintiff's Fifth Claim For Relief is entirely unsupported and should be summarily dismissed. As Plaintiff concedes, Plaintiff must prove a likelihood of confusion exists in the marketplace whereby persons are likely to transact business with one party under the belief they are dealing with another." *Dahms v. Jacobs,* 201 Neb. 745, 272 N.W.2d 43 (1978). However, Plaintiff has produced no evidence demonstrating any business practice by RBM which would create a likelihood of confusion in the marketplace. RBM does not claim that it or any of its services are in any way affiliated with ES&S. [Doc. #113-3]. To the contrary, the evidence reflects that RBM and ES&S are fierce competitors. ES&S has gone so far as to engage in a campaign to warn customers and regulators that RBM was neither competent nor able to perform the services RBM offers. It is quite rich in this context for ES&S to now claim that customers are likely to be confused as to who they are dealing with. ES&S has devoted substantial energies the last five years to make sure that RBM's customers know that RBM is cutoff from new replacement parts.

Plaintiff also argues that RBM is creating confusion by supplying replacement parts, a practice that Plaintiff claims "may or may not meet the certification standards." [Doc. #136, at 19]. Plaintiff's argument is wholly without merit. RBM has been successfully supplying replacement parts for years, despite ES&S best efforts to cut off supply. No state or federal regulator has ever questioned the practice, despite ES&S best efforts. ES&S is of course entirely

disingenuous, having engaged in the identical practice for years.  ES&S has no qualms using salvaged parts, and saw no difficulty borrowing voting machines from Canada.

Next, Plaintiff argues that RBM's claim that it is qualified to service ES&S machines is misleading because RBM does not have access to the specialized training that ES&S offers to its employs.  RBM's response is that the results speak for themselves.  RBM continues to retain clients and grow market share, despite not having access to ES&S' "specialized" training for more than five years.  This fact belies that the maintenance and support services are not proprietary, and that no specialized training is needed.

Lastly, Plaintiff asserts that RBM has represented that it is a certified DS200 printer. RBM denies that it makes any such representations.  However, the only evidence purported supporting this claim is an inadmissible hearsay assertion, wherein an ES&S employee recites a conversation that allegedly took place nearly four years ago.  The evidence propounded by Plaintiff is incompetent for purposes of creating a genuine issue of material fact.

Plaintiff has failed to demonstrate the existence of any genuine issue of material fact upon which a jury could find for Plaintiff on its Fifth Claim for Relief.  Defendants are therefore entitled to summary judgment as a matter of law.

## **CONCLUSION**

For each of the reasons stated herein, and in Defendants' original brief, Defendants respectfully request the Court to grant their Motion to for Summary Judgment, and dismiss with prejudice, all claims asserted against the Defendants in the Amended Complaint, with costs taxed to Plaintiff, and any other relief deemed appropriate by the Court.

DATED:  January 5, 2014.

RBM  CONSULTING,  LLC  and  GERALD G. HAYEK, Defendants.

/s Michael S. Degan
Michael S. Degan (#20372)
Kamron Hason
HUSCH BLACKWELL LLP
13330 California Street, Suite 200
Omaha, NE  68154
(402) 964-5000 Telephone
(402) 964-5050 Facsimile
mike.degan@huschblackwell.com
kamron.hason@huschblackwell.com

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I  hereby  certify  that  on  January  5,  2015,  I  electronically  filed  the  above  using  the CM/ECF system which sent notification of such filing to the following:

Michael C. Cox           mike.cox@koleyjessen.com
Daniel Fischer            dan.fischer@koleyjessen.com
David A. Yudelson       david.yudelson@koleyjessen.com

/s Michael S. Degan